# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 08-6022

_____

In re:                                   *
                                         *
James Lewis Wilmoth, etc., et al.,       *
                                         *
         Debtor.                         *
                                         *
William M. Clark, Jr.,                   *    Appeal from the United States
                                         *    Bankruptcy Court for the Western
         Trustee-Appellant,              *    District of Arkansas
                                         *
         v.                              *
                                         *
James L. Wilmoth, et al.,                *
                                         *
         Debtors - Appellees             *

_____

Submitted: October 29, 2008
Filed: December 9, 2008
(Corrected December 10, 2008)
(Corrected December 31, 2008)

_____

Before KRESSEL, Chief Judge, SCHERMER and McDONALD, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

William M. Clark, Jr., the chapter 7 trustee, appeals the bankruptcy court's[1] order of May 23, 2008, overruling the trustee's objection to the debtors' claim of exemptions. We have jurisdiction over this appeal from a final order. 28 U.S.C. § 158(b). Because we conclude that the debtors' pre-bankruptcy planning was permissible under *Addison v. Seaver (In re Addison)*, 540 F.3d 805 (8th Cir. 2008), we affirm.

## BACKGROUND

James Wilmoth is a general contractor in Gentry, Arkansas. His business is primarily "dirt work": excavation and site preparation. James has worked in construction since 1977, when he started Wilmoth Backhoe. Over the years, his business grew as he expanded its scope and acquired more equipment until it encountered serious troubles in 2006, when the construction market began to bottom out.

In 2006, James went to the equipment dealers he had worked with for thirty years to see if he could refinance or sell his equipment because his cash flow was slowing to a trickle. At the time, the salesmen advised him to keep working with the finance companies. James could not collect his receivables, and his business went from being in the black into the red. He returned to the equipment dealers, most of which agreed to refinance or waive payments. None repossessed the equipment, perhaps due to the length of their relationships with James or because the abundance of equipment in the area meant there was no local market for the collateral. Construction companies all around him were folding and auctioning their equipment. As the days and weeks went by, however, it became clear to James that repossession was imminent.

---

[1] The Honorable Ben T. Barry, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

Meanwhile, Dave and Linda Bisbee sued him for breach of contract over the construction of a subdivision. The Bisbees obtained a judgment against James for approximately $864,000.00. Facing an enormous judgment at a time when he could not even make payments on his equipment, James went to his lawyer, John Terry Lee, to discuss bankruptcy. Terry advised him to sell some of his property and pay down his mortgage to receive the protection of Arkansas's homestead exemption, but to leave a significant amount of assets available for creditors. James followed Terry's pre-bankruptcy planning advice.

In October or early November of 2007, James sold nine or ten pieces of equipment, most or all of which were subject to liens, to an equipment broker for fair market value and realized over $300,000.00 on the sales. Because James had been behind on his equipment payments, he had believed at the time of sale that unless he sold the equipment, most or all of it soon would have been repossessed. From the proceeds, he first paid off the companies that had liens against the equipment.

James and Jodie Wilmoth maintain a homestead on 22 acres in Gentry, Arkansas. The property contains two houses- the Wilmoths' residence and a "mother-in-law" structure where their daughter resides. The tract of land on which the Wilmoth residence is located was formerly a chicken farm that had been subdivided into three parcels. The monthly payments on the two mortgages (both held by First Horizon) are $1832.26 and $363.00. In November 2007, the Wilmoths paid down their first mortgage in the amount of $140,351.16 from the approximately $300,000.00 realized on the sale of the equipment. The $140,000.00 was divided into prepayments directed toward the next ten months and then toward principal. James testified that this was not done to hinder his creditors, nor was it done to delay his creditors or defraud them.

The Wilmoths filed their chapter 7 petition on November 29, 2007. At the time, one of James's companies, Phase I Turnkey, was still completing a job. The trustee permitted him to continue business operations long enough to finish the project. As a result, James was able to pay Phase I Turnkey's suppliers, vendors, and other bills.

Ultimately, he paid Phase I Turnkey's creditors over $440,000.00 on unsecured debts of around $506,000.00.

The Wilmoths elected to use the Arkansas exemptions, and claimed their homestead as exempt. The chapter 7 trustee, William M. Clark, Jr., objected to the exemption because: 1) the identified property was two tracts with two dwellings, and 2) 11 U.S.C. § 522(o) provides for the reduction of value of an exemption where the value is the result of the debtor's intent to hinder, delay or defraud creditors. The bankruptcy court held a hearing on the trustee's objection on May 20, 2008 and overruled the objection on both bases. The trustee has not appealed that part of the court's decision which held that the property consisted of one parcel.

The court found that the trustee had not met his burden of proving that the Wilmoths acted with intent to hinder, delay, or defraud their creditors when they increased their homestead exemption value through the liquidation of equipment. The court noted that the addition of 11 U.S.C. § 522(o) to the Bankruptcy Code had not changed the legal analysis of whether the transformation of non-exempt property into exempt property was prudent pre-bankruptcy planning or fraudulent, and that the section was likely added to the Bankruptcy Code to extend the look-back period. It found the testimony of both Dave Bisbee and James Wilmoth to be credible, and that the differences in testimony were reconcilable and not material. The court found it significant that the Wilmoths had not liquidated all of their assets to increase their homestead exemption; that had James delayed the sale, the value of the assets would likely have diminished further, resulting in less value to the estate; that James sold the equipment for fair market value; that James paid off secured creditors, freeing up more assets for unsecured creditors; that James did not conceal his actions; and that the Wilmoths acted in good faith.

## Standard of Review

"The question of whether an individual acted with intent to defraud in converting non-exempt property into exempt property is a question of fact, on which the bankruptcy court's finding will not be reversed unless clearly erroneous." *Jensen v. Dietz (In re Sholdan)*, 217 F.3d 1006, 1010 (8th Cir. 2000) (citing *Hanson v. First Nat'l Bank in Brookings,* 848 F.2d 866, 868 (8th Cir. 1988)).

## DISCUSSION

The sole issue on appeal is: did the bankruptcy court err in finding no intent to hinder, delay or defraud and therefore allowing the debtors their full homestead exemption over the objection of the trustee, where the debtors had converted non-exempt assets on the eve of bankruptcy to increase the value of the homestead exemption? Debtors are allowed to "choose to exempt from property of the bankruptcy estate that property which is exempt under the applicable state or federal law." 11 U.S.C. § 522(b). The Wilmoths used the Arkansas exemptions, which provide an unlimited homestead exemption to "any resident of [Arkansas] who is married or the head of a family." Art. 9, § 3, Const. of Ark. (1874). The legal basis for the trustee's objection was 11 U.S.C. § 522(o), which was added to the Bankruptcy Code with the 2005 amendments and states in part,

> […] the value of an interest in—
> > (1) real or personal property that the debtor or a dependant of the debtor uses as a residence [… or]
> > (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that

portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

It is not disputed that the debtors converted non-exempt property to increase their homestead exemption within the 10-year look-back period; rather, the parties dispute the issue of intent, and whether the addition of § 522(o) has changed the way pre-bankruptcy homestead exemption planning is treated in the Eighth Circuit. The trustee would have had the bankruptcy court reduce the debtors' homestead exemption by the extra payments they made shortly before their bankruptcy filing.

### The presence of some badges of fraud is not enough for a finding of intent; there must also be extrinsic evidence.

The Eighth Circuit Court of Appeals has spoken in a long line of cases on the conversion of non-exempt assets to exempt assets on the eve of bankruptcy, and "intent to hinder, delay or defraud" in the context of allowing exemptions, avoiding fraudulent transfers, dismissing cases and denying discharges. *See, e.g., Sholdan v. Dietz (In re Sholdan)*, 217 F.3d 1006 (8th Cir. 2008) (*Sholdan I*) (trustee objected to chapter 7 debtor's claim of exemption where debtor had increased value of homestead exemption on eve of bankruptcy); *Sholdan v. Dietz (In re Sholdan)*, 217 F.3d 1006 (8th Cir. 2000) (*Sholdan II*) (same); *Kelly v. Armstrong*, 206 F.3d 794 (8th Cir. 2000) (*Armstrong IV*) (trustee challenged four property transfers by chapter 7 debtors on the eve of bankruptcy that debtors had used to purchase exempt annuities); *Panuska v. Johnson (In re Johnson)*, 880 F.2d 78 (8th Cir. 1989) (creditor objected to chapter 7 debtor's discharge where, on the eve of bankruptcy, debtor had converted $400,000 into exempt property); *Norwest Bank Neb. v. Tveten (In re Tveten)*, 848 F.2d 871, 874 (8th Cir.1988) (creditor objected to chapter 11 discharge where, on the eve of bankruptcy, debtor had converted $700,000 of non-exempt property into exempt property); *Forsberg v. Sec. State Bank of Canova*, 15 F.2d 499 (8th Cir. 1926)

6

(creditor objected to debtor's discharge where, on the eve of bankruptcy, debtor had traded non-exempt property for exempt property).

Between the time that the parties submitted their briefs and oral argument, the Eighth Circuit Court of Appeals again addressed the issue of exemptions and pre-bankruptcy planning. In *Addison v. Seaver (In re Addison)*, 540 F.3d 805 (8th Cir. 2008), the Eighth Circuit declined to define a bright-line rule on when the transfer of value from non-exempt to exempt assets is egregious enough to be proscribed, choosing instead to leave the discretion largely to the bankruptcy court. However, it cautioned that the sort of pre-bankruptcy planning Addison engaged in is usually permissible. The Eighth Circuit compared the language of § 522(o) to § 548, which allows a bankruptcy trustee to avoid pre-petition transfers made "with actual intent to hinder, delay or defraud" the debtor's creditors, and § 727(a)(2), which directs the court to grant a debtor's discharge unless a debtor has transferred assets "with intent to hinder, delay, or defraud a creditor or an officer of the estate." *Id*. at 811. Based on the nearly identical phrasing, the Eighth Circuit concluded that a debtor's intent under § 522(o) should be determined under the badges of fraud approach. *Id*. at 813 (citing *Sholdan II* at 1009; *Jackson v. Star Sprinkler Corp. of Fla.*, 575 F.2d 1223, 1237 (8th Cir. 1978); *Graven v. Fink (In re Graven)*, 936 F.2d 378, 383 (8th Cir. 1991)). However, there *must* be extrinsic evidence of fraud, other than the badges themselves, to support a finding of intent to defraud.[2] *Addison* at 814. "[A] debtor's conversion of non-exempt property to exempt property on the eve of bankruptcy for the express purpose of placing that property beyond the reach of creditors, without more, will not

---

[2] "In finding that Addison had the requisite intent to defraud, the bankruptcy court properly looked to the badges of fraud […] and found four badges of fraud resulting from Addison's day-of-filing mortgage payment […]. The bankruptcy court's underlying factual findings are themselves not clearly erroneous; however, they do not identify any 'extrinsic evidence of fraud.' In the absence of extrinsic evidence of fraud, we find clear error in the bankruptcy court's ultimate determination of intent to defraud." *Addison* at 813-14 (footnote omitted).

deprive the debtor of the exemption to which he otherwise would be entitled." *Id*. at 814 (quoting *Hanson,* 848 F.2d at 868).

## The addition of § 522(o) to the Bankruptcy Code does not establish any new law in the Eighth Circuit.

The trustee argues that the addition of § 522(o) changed the required analysis of intent to hinder, delay or defraud in the context of pre-bankruptcy homestead exemption planning. We disagree. More importantly, the Eighth Circuit disagrees. The Eighth Circuit has determined that the traditional badges of fraud approach applies to the analysis of the requisite intent under § 522(o). *Addison* at 813. Rather than establishing a new evidentiary standard for pre-bankruptcy homestead exemption planning, the addition of § 522(o) marks out a look-back period of ten years. *Addison* at n. 7. It also extends what was the law in the Eighth Circuit and made it uniform national law. After rejecting the argument that § 522(o) creates a new evidentiary standard, the court stated that § 522(o) "merely establishes a 10-year look-back period […] from which such evidence may be considered". *Id*. To the extent there was any doubt about whether § 522(o) created new law, the Eighth Circuit resolved that question in the negative.

The trustee argues that to read § 522(o) as merely defining the look-back period would render it superfluous. As interpreted by the Eighth Circuit in *Addison*, the addition does not establish any new law in this circuit. The Eighth Circuit had already held that under some circumstances, shifting non-exempt assets into exemptions pre-bankruptcy would result in the denial of the exemption or discharge, but other courts had not uniformly applied the same analysis and some had allowed the exemptions almost regardless of intent. *See, e.g., In re Farmer*, 295 B.R. 322 (Bankr. W.D. Wis. 2003) (holding that debtors are entitled to "full use" of exemptions, regardless of their source); *In re Sumerell*, 194 B.R. 818, 835 (Bankr. E.D. Tenn. 1996) ("this court is not persuaded that even if the requisite showing of bad faith or fraud had been established, that denial of exemptions, unrelated to the alleged fraud, is the appropriate remedy"); *Barker v. First Colony Life Ins. Co. (In re Barker)*, 168 B.R. 773 (Bankr.

8

M.D. Fla. 1994) (holding that Chapter 7 debtor was entitled to "full use" of exemptions, regardless of whether debtor acted with intent to hinder, delay or defraud creditors); *In re Swift*, 124 B.R. 475 (Bankr. W.D. Tex. 1991) (overruling objection to exemption, because although "[t]here of course is great appeal to preventing a perceived malfeasor from enjoying the fruits of his or her malfeasance", the Bankruptcy Code did not contain a statutory basis for that remedy).

Prior to the 2005 amendments, few other circuits had addressed whether a debtor's exemption could be denied or reduced on the basis that it was created or increased by the conversion of non-exempt property with fraudulent intent. The Fifth, Sixth, Ninth and Tenth Circuits had directly allowed the remedy. *See, e.g., Latman v. Burdette*, 366 F.3d 774, 786 (9th Cir. 2004) (holding that "the bankruptcy court may equitably surcharge a debtor's statutory exemptions when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code"); *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 107, 1073 (10th Cir. 1991) (affirming allowance of homestead exemption where, although debtor paid down mortgage with non-exempt assets, her "other activities do not bespeak of fraudulent intent"); *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319 (5th Cir. 1988) (ordering lower court to reconsider debtor's exemption claim and evaluate it for bad faith, stating "concealment of an asset bars the exemption of that asset"); *Shanks v. Hardin*, 101 F.2d 177 (6th Cir. 1939) (affirming denial of homestead exemption where debtor had acquired additional property interests from his siblings for the "purpose of converting non-exempt property into property in which he would be entitled to a homestead and thus prevent his creditors from reaching it").

In an early case, the Second Circuit had contemplated denial of an exemption as a remedy for abusive pre-bankruptcy exemption planning. *Schwartz v. Seldon*, 153 F.2d 334, 337 (2d Cir. 1945) (where debtor had borrowed against exempt insurance policies and then repaid the debts shortly before bankruptcy, exemption was properly

allowed: "even the conversion of nonexempt property into exempt property by an insolvent contemplating bankruptcy has been held a transaction not intended to defraud creditors *in the absence of evidence of extrinsic fraud*") (emphasis added) (citing *Forsberg v. Sec. State Bank*, 15 F.2d 499 (8th Cir. 1926)). The Fourth and Seventh Circuits had set limitations on pre-bankruptcy exemption planning but not come to the conclusion that denial of the exemption was an appropriate remedy. *See, e.g., Smiley v. First Nat'l Bank of Belleville (Matter of Smiley)*, 864 F.2d 562, 569 (7th Cir. 1989) (court affirmed denial of discharge for fraudulent use of exemptions, noting that although the courts "should not prohibit a debtor's full use of exemptions within the limits of the law" they should "look, however, for extrinsic signs of fraud"); *Ford v. Poston*, 773 F.2d 52 (4th Cir. 1985) (affirming avoidance of transfer under 11 U.S.C. § 727 where debtor, with actual intent to defraud, had converted non-exempt property into exempt property). The First, Third, and Eleventh Circuit Courts of Appeals had not published any opinions on the propriety of pre-bankruptcy exemption planning. In addition, although § 522(o)'s exemption abuse remedy did not change the treatment of abusive or fraudulent exemptions in the Eighth Circuit, our courts have not previously set a definite look-back period.

**The court was not clearly erroneous in finding that although some badges of fraud were present, there was no extrinsic evidence of intent to hinder, delay or defraud.**

At trial, the court found that some badges of fraud were present but others were not. The common badges of fraud include, among others, "(1) actual or threatened litigation against the debtor; (2) a transfer of all or substantially all of the debtor's property; (3) insolvency on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) retention of the property by the debtor after the transfer." *Armstrong IV* at 798 (quoting *Kelly v. Armstrong,* 141 F.3d 799 (8th Cir. 1998) (*Armstrong III*). For instance, the court found that the transfer benefitted the debtors and that they were in possession of the assets and that the transfer occurred at the time of the Bisbee judgment, but that the Wilmoths did not liquidate substantially all of their assets, fully disclosed their transfer, did not convey the

equipment for inadequate consideration, and relied on the advice of counsel. The court gave significant weight to the fact that the Wilmoths' Statement of Financial Affairs fully disclosed the Wilmoths' payments to their mortgagor, First Horizon. The record, including the testimony and documentary evidence, supports the court's finding that some, but not all, of the badges of fraud were present. In addition, the debtors were able to use some of the payments on their mortgage as advance payments of their monthly contractual payments, enabling them to weather the period immediately following the cessation of their business and save their home.

Although the court found the presence of some badges of fraud, it found no extrinsic evidence that the Wilmoths acted with intent to defraud. The court noted in particular that James was forthcoming with the trustee, received fair value for the equipment, and acted upon the advice of counsel. The court found that the assets would have continued to diminish in value or even be repossessed, and as a result, the sale actually benefitted the estate.

**The trustee may not raise a new argument on appeal.**

The trustee argues for the first time at oral argument on appeal that even if the debtors' conversion of exempt to non-exempt property was not fraudulent, it was an attempt to <u>hinder</u> or <u>delay</u> creditors and that the disjunctive phrasing of the statute allows the court to find intent to hinder even where there is no intent to defraud. "Ordinarily, we do not consider an argument raised for the first time on appeal. We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result." *Henning v. Mainstreet Bank*, 538 F.3d 975, 979 (8th Cir. 2008) (quoting *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002)); *Stalnaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004) ("We do not ordinarily review an issue on appeal if the parties did not first raise it at trial unless it is a strictly legal question and manifest injustice would result from our failure to review it").

11

We decline to address the trustee's new argument, except to note that the Eighth Circuit "has been reluctant to deny a homestead exemption without a finding of intent to defraud." *Addison* at 812 (citing *Sholdan I*, 108 F.3d at 888; *Panuska v. Johnson (In re Johnson)*, 880 F.2d 78, 80 n. 1 (8th Cir. 1989); *Coder v. Arts*, 213 U.S. 223, 242, 29 S.Ct. 436, 53 L.Ed. 772 (1909)).

## **CONCLUSION**

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.