**In re Candace BOOTH, Debtor.**

**No. 6:09–bk–07504–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Oct. 29, 2009.

Christopher J. Shipley, Shipley Law Firm, Mount Dora, FL, for Debtor.

### ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Objection to Debtor's Claim of Homestead Exemption (Doc. No. 18) ("Objection") filed by the Chapter 7 Trustee Carla P. Musselman ("Trustee") and the Amended Response thereto (Doc. No. 21) filed by the Debtor Candace Booth ("Debtor"). An evidentiary hearing was held on October 5, 2009 at which the Debtor, the Trustee, and their respective counsel appeared. The Trustee filed a post-hearing brief pursuant to the Court's directive. The Trustee's Objection is due to be overruled for the reasons set forth herein.

### Homestead Acquisition

The Debtor filed this case on May 29, 2009 ("Petition Date"). She provides natural health consultant services through her limited liability company Natural Health Plus, LLC. Her business on the Petition Date generated average monthly income of $2,511.00 and she receives monthly Social Security payments of $1,020.00. Schedule J reflects the Debtor has monthly expenses of $5,463.33 and negative disposable income of $1,932.33. Her business has diminished post-petition and she is working part-time with her daughter's business earning $8.00 an hour. She is sixty-four and has no other sources of income.

The Debtor has secured debts of $151,991.00 relating to a non-homestead residential property located at 2130 Palmetto Road, Mount Dora, Florida 32757 ("Palmetto Road") and a 2005 Nissan Murano. She has general unsecured debts of $16,580.00 incurred through three credit cards. Her Schedule B assets total $115,572.00 and include: $1,200.00 in her Regions Bank checking account; household goods and wearing apparel of $1,020.00; an American Legacy annuity of $100,000.00; and the Nissan valued at $13,200.00. The Schedule B assets, including the nominal equity in the Nissan, are fully exempt.

The Debtor, individually, owns two parcels of residential property: Palmetto Road and 1691 Elkhart Circle, Tavares, Florida 32778 (the "Property"). She purchased the Property on March 24, 2009 and has continuously resided in the Property since April 2009. She valued the Property at $87,675.00 in Schedule A and claimed it as fully exempt homestead property in Schedule C pursuant to Article X, Section 4(a)(1) of the Florida Constitution and Fla. Stat. Sections 222.01 and 222.02 (Doc. No. 1). She owns the Property individually and it is unencumbered.

The Debtor purchased the Property for $85,000.00 (Trustee's Ex. No. 9) and funded the purchase price with:

(i) $5,000.00 from the Debtor's daughter for the earnest money deposit (Trustee's Ex. Nos. 8, 9);

(ii) $21,619.41 from the liquidation of the Debtor's individual retirement account consisting of two liquidating transactions on March 9, 2009 of $8,312.14 and $13,307.27 (Trustee's Ex. No. 8);

(iii) $49,962.38 from the liquidation of the Debtor's brokerage account on March 9, 2009 (Trustee's Ex. No. 8); and

(iv) $3,641.05 from the Debtor's daughter (Trustee's Ex. Nos. 8, 9).

The funds of $71,452.71 generated from the stock and IRA liquidations were deposited into the Debtor's Regions Bank checking account on March 10, 2009 (Trustee's Ex. No. 6). The funds were transmitted to the closing agent Campione & Hackney, P.A. on March 23, 2009 (Trustee's Ex. No. 7).

The Debtor valued Palmetto Road at $100,523.00 in Schedule A (Doc. No. 1). She purchased Palmetto Road in September 2001 and resided there continuously through April 2009. She purchased Palmetto Road for $92,000.00 and spent $45,000.00 upgrading it. Palmetto Road is encumbered by a first-priority mortgage of $99,549.00 held by CitiMortgage and a home equity credit line of $40,004.00 held by Bank One/Chase. The Debtor is the sole obligor of the mortgages.

There is no equity in Palmetto Road. It has been vacant since April 2009 and the Debtor is attempting to rent or sell it. Its value has diminished since the Petition Date and the Debtor estimated it has a current value of $79,000.00.

### Trustee's Objection

The Trustee objects to the Debtor's homestead exemption claim pursuant to 11 U.S.C. Section 522(o) asserting she acquired the Property using non-exempt assets with the intent to hinder, delay, or defraud her creditors.[1] Section 522(o) provides the value of an interest in real property claimed as a homestead:

> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exemption, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o) (2005). A debtor's Florida homestead exemption claim is presumptively valid. *Colwell v. Royal Int'l Trading Corp. (In re Colwell)*, 196 F.3d 1225, 1226 (11th Cir.1999). The Trustee must establish by a preponderance of the evidence the claim of exemption is invalid. FED. R. BANKR.P. 4003(c); *In re Mo-*

---

1. The Trustee references 11 U.S.C. Section 522(p) in Paragraph 1 of her Objection, but did not plead or pursue an exemption objection pursuant to Section 522(p).

*hammed,* 376 B.R. 38, 41 (Bankr.S.D.Fla. 2007).[2]

The issue for determination is whether the Debtor purchased the Property with the intent to hinder, delay, or defraud her creditors. Congress did not delineate what the phrase "intent to hinder, delay, or defraud" means when it enacted Section 522(*o*). Similar language is contained in 11 U.S.C. Sections 548(a)(1)(A) and 727(a)(2). The Courts, in determining Section 522(*o*) objections, have looked to the body of case law addressing Sections 548(a)(1)(A) and 727(a)(2). *Addison v. Seaver (In re Addison),* 540 F.3d 805, 811 (8th Cir.2008).

■■■■ The "badges of fraud" approach is used in analyzing a debtor's intent in a Section 548(a)(1)(A) or Section 727(a)(2) proceeding and has been routinely employed in Section 522(*o*) determinations. *Id.* The Eleventh Circuit Court of Appeals has identified various badges of fraud. *Dionne v. Keating (In re XYZ Options, Inc.),* 154 F.3d 1262, 1271–72 (11th Cir. 1998) (delineating eleven badges of fraud). The presence of some badges of fraud does not necessarily establish bad intent. "[A] confluence of badges *can* constitute conclusive evidence of an actual intent to defraud." *Id.* at 1271 n. 17 *(emphasis added) (citation omitted).* "However, there *must* be extrinsic evidence of fraud, other than the badges themselves, to support a finding of intent to defraud." *Clark v. Wilmoth (In re Wilmoth),* 397 B.R. 915, 920 (8th Cir. BAP 2008).

■■■■ The purchase of the Property is the relevant time period for evaluating the Debtor's intent pursuant to the plain language of 11 U.S.C. Section 522(*o*). The Debtor's bankruptcy papers filed on the Petition Date and post-petition are not indicative of her intent when she purchased the Property.

### *Intent Analysis*

The Trustee asserts the following actions and circumstances establish an intent to hinder, delay, or defraud the Debtor's creditors:

(i) The Debtor converted non-exempt assets to an exempt asset on the eve of bankruptcy.

(ii) She was delinquent on her mortgage payments when she purchased the Property.

(iii) She could have used her non-exempt assets to cure the mortgage arrearages and reduce her credit card debt.

(iv) She attempted to draw $20,000.00 from the Chase home equity credit line on March 9, 2009 knowing the mortgages were in default and she had insufficient income to make the mortgage payments.

(v) She incurred credit card charges of $8,019.86 after purchasing the Property.

(vi) She was solvent prior to purchasing the Property and became insolvent post-purchase.

(vii) Palmetto Road has not been rented or sold.

The Debtor explained she opened the Chase $60,000.00 line of credit five or six years ago and gave "the checkbook" to her daughter with the intention the line of credit would be used for the daughter's business. Her daughter is not an obligor of the debt, but agreed to be responsible for making the loan payments to Chase.

---

2. The Debtor, at the conclusion of the evidentiary hearing, requested the exhibits attached to her Response be admitted into evidence. No exhibits are attached either to her original Response (Doc. No. 20) or Amended Response (Doc. No. 21). The only exhibits admitted into evidence are those of the Trustee.

The daughter drew down on the line of credit and made loan payments directly to Chase. The Debtor trusted her daughter to be responsible and make the payments. The Debtor did not receive statements for the line of credit.

The daughter returned the line of credit "check book" to the Debtor in February 2009. The Debtor discovered a secured indebtedness of $39,000.00 was owed to Chase and the loan was in arrears due to the daughter's payment defaults. The Debtor's business was declining and she had insufficient income to make the Palmetto Road mortgage payments and cover her basic living expenses. Her daughter was unwilling or unable to cure the line of credit arrears.

The Debtor realized she could not afford the Palmetto Road monthly mortgage payments and cure the line of credit arrearage. She, with the assistance of a mortgage broker, attempted to refinance Palmetto Road. Her attempts were unsuccessful due to her insufficient income, self-employed status, and the continuing depreciation of Palmetto Road. The value of Palmetto Road plummeted to $79,000.00 due to the real estate market downturn. The Debtor was not solvent in early 2009 on either a cash flow or balance sheet basis.

She was panic stricken by her financial situation and tried to withdraw $20,000.00 from the Chase line of credit on March 9, 2009 which she intended to use to cure the mortgage arrears. The draw-down was denied by Chase. Her attempt to obtain $20,000.00 from the line of credit was not made with any bad or fraudulent intent. It was a frantic attempt by the Debtor to resolve her immediate financial problems.

She was fearful she would lose her home and have no place to live.

The Debtor's financial situation continued to deteriorate as her business dwindled and the secured debt arrearages grew. Her fear of having no home escalated. She sought the advice of a real estate agent who advised her to rent or sell Palmetto Road and seek alternative housing. He recommended Palmetto Road would show better if she vacated the property.

■ The Debtor searched for alternative housing and found the Property. She, relying upon the advice of the real estate agent, purchased the Property and vacated Palmetto Road. She "guilted" her daughter into contributing approximately $10,000.00 to the purchase price. Neither the Debtor's mortgage broker nor the real estate agent discussed a short sale of Palmetto Road with the Debtor.[3] She was unaware a short sale was a possible option for resolving her mortgage issues.

The Property required substantial repairs to make it habitable. The Debtor spent almost a month repairing the Property and moved into the Property in April 2009. She used her credit cards to fund the refurbishment (Trustee's Ex. 10). She incurred charges of $5,867.29 on her Chase Business Card between March 10, 2009 and April 9, 2009 (Trustee's Ex. 12). She incurred charges of $5,081.52 on her USAA Savings Bank credit card between March 14, 2009 and April 13, 2009 (Trustee's Ex. 11). The majority of these charges were for the Property's refurbishment and remainder relate to basic living expenses. The Debtor intended to repay the credit card debt. She had no intention of filing for bankruptcy when she pur-

---

3. "A short sale is, in its simplest definition, a sale by a willing seller to a willing buyer for less than the total encumbrances on the home with the consent of the underlying lienholders who agree to take less than what they are owed." *In re Fabbro*, 411 B.R. 407, 413 n. 7 (Bankr.D.Utah 2009).

chased the Property or when she incurred the credit card debt.

The Debtor's financial situation further deteriorated in April 2009. Her business essentially ceased and Palmetto Road remained unrented. She explained her customers are unable to afford her nutrition services and products in this difficult economic environment. She expected Palmetto Road would be rented and produce rental income. Palmetto Road remains vacant. She sought bankruptcy protection in May 2009 as a last resort.

The Debtor, in response to the Court's inquiry why she did not use her stock or IRA assets to cure the Palmetto Road arrearages, stated she was desperate to find a place to live and "didn't think this through." The Debtor was credible throughout her testimony.

### *Conclusion*

■ The Debtor did not commit any acts with the intent to hinder, delay, or defraud her creditors. The circumstances surrounding the Debtor's purchase of the Property do not reflect fraudulent intent. None of the traditional badges of fraud are present. She fully and credibly explained her actions.

The Debtor lives a modest lifestyle and had no financial problems until her daughter defaulted on the line of credit payments. She has no priority unsecured debts and she is current with her car payments. Her credit card debt is modest. Her credit card billing statements and Schedules reflect a history of responsible credit card use. She did not purchase luxury goods or take cash advances. She consistently paid her credit card bills. The balance of her Chase credit card was $351.56 when she incurred the home repair charges.

Even though the Debtor's income was decreasing in early 2009, her expenses were manageable. She was able to cover the first mortgage, her car and credit card payments, and living expenses. Her financial world collapsed with her daughter's disclosure of the line of credit default. The default was the tipping point, turning the Debtor's manageable financial situation to unmanageable. The Palmetto Road debt spiraled out of control. The economic crash made her situation desperate. Her business dwindled and Palmetto Road depreciated. The Debtor panicked. She made the best decisions she could under tremendous financial stress and without the benefit of comprehensive professional advice.

None of the Debtor's actions were made with an intent to defraud her creditors. She embarked on a course of action recommended to her by professionals she trusted. Their advice was realistic and she relied upon it. She, relying upon their advice, liquidated her brokerage and IRA accounts to purchase the ·Property. She incurred credit card debt making the Property habitable. She intended to repay the credit card debt and make the Palmetto Road mortgage payments, but could not due to her continuing loss of income and inability to rent Palmetto Road. She has been attempting to rent or sell Palmetto Road. She sought bankruptcy protection as a last resort.

A Chapter 7 Trustee, pursuant Section 522(*o*) as enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, is charged with challenging a homestead exemption made with fraudulent intent. The Debtor's course of action on its face, from a Chapter 7 Trustee's perspective, could be perceived to be motivated by improper intent. The surrounding circumstances and facts establish her course of action was not designed to manipulate the exemption system. All of her actions were made in good faith.

826

The Trustee has failed to establish by a preponderance of the evidence the Debtor's homestead exemption claim in the Property is invalid. The Property constitutes exempt homestead property pursuant to Article X, Section 4(a) of the Florida Constitution and Fla. Stat. Sections 222.01, 222.02, and 222.05.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Trustee's Objection (Doc. No. 18) is hereby **OVERRULED;** and it is further

**ORDERED, ADJUDGED and DECREED** that the Debtor's homestead exemption claim is hereby **ALLOWED** and her interest in 1691 Elkhart Circle, Tavares, Florida 32778 is exempt as homestead pursuant to Article X, Section 4(a) of the Florida Constitution and Fla. Stat. Sections 222.01, 222.02, and 222.05.