# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3813

_____

| | |
|---|---|
| In re: | * |
| | * |
| Lawrence D. Danduran, Jr., | * |
| | *  Appeal from the United States |
| Debtor, | *  Bankruptcy Appellate Panel of the |
| _____ | *  Eighth Circuit. |
| | * |
| Lawrence D. Danduran, Jr., | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Kip M. Kaler, Chapter 7 Trustee for the | * |
| Estate of Lawrence D. Danduran, Jr., | * |
| | * |
| Appellant. | * |

_____

Submitted: June 14, 2011
Filed: September 16, 2011

_____

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

---

[1]The Honorable Raymond C. Clevenger, III, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Kip M. Kaler, the Chapter 7 Trustee, appeals from the decision of the Bankruptcy Appellate Panel (BAP) reversing the bankruptcy court's judgment that the proceeds of personal property sold with a homestead are not proceeds of the homestead. Having jurisdiction under 28 U.S.C. § 158(d)(1), this court reverses the judgment of the bankruptcy court and remands.

On September 15, 2009, Lawrence D. Danduran, Jr., the debtor, sold his real estate — along with some personal property — in New Rockford, North Dakota, for $225,000. The real estate contract set out the property at a specific street address, a long pre-printed list of fixtures, then the following hand-written list of personal property:

> Pool table, hot tub, washer/dryer, deck/patio furniture/BBQ grill, theater seating in great room, area rug under the theater seating in great room, mirror in entry way, wreath above fireplace in great room, wreath on wall in hot tub room, audio-visual equipment in theater/great room and in basement, chair and ottoman in great room, two mission-style tables, coffee table.

Of the sale price, $140,860.38 was paid directly to Washington Mutual to pay off the first mortgage. The remainder was deposited in a savings account, which already included the $1,000 earnest deposit and later received the refund of escrow amounts previously held by Washington Mutual.

Danduran filed for bankruptcy, claiming a homestead exemption for the savings account balance of $87,501.55. The Trustee objected, asserting that a "significant portion" of the account was the proceeds of (non-exempt) personal property. After a hearing, the bankruptcy court sustained the objection, ruling:

> $7,700 of the funds deposited into this account is from the sale of personal property sold with the house and is not proceeds of the homestead and therefore not exempt.

Danduran appealed to the BAP. It reversed, holding:

> In view of . . . the Eighth Circuit's permissive approach to non-fraudulent pre-bankruptcy planning, we find the Debtor's establishment of a savings account for the specific purpose of depositing the proceeds of his homestead and his subsequent deposit into that account of the proceeds from the personal property (allegedly) sold with his homestead [are] sufficient indicia of his intent to convert non-exempt personal property into exempt, homestead property.

*In re Danduran*, 438 B.R. 658, 661 (8th Cir. BAP 2010). The Trustee appeals.

In an appeal from the BAP, this court independently reviews the bankruptcy court's decision, applying the same standard of review as the BAP. *In re Ungar*, 633 F.3d 675, 678-79 (8th Cir. 2011), *citing In re Lasowski*, 575 F.3d 815, 818 (8th Cir. 2009). Fact findings by the bankruptcy court are reviewed for clear error, while its conclusions of law are reviewed de novo. *Id.* at 679. A finding of fact is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Leuang*, 211 B.R. 908, 909 (8th Cir. BAP 1997) (citations omitted).

Under the Bankruptcy Code, a debtor may exempt property from the bankruptcy estate as allowed by state law. **11 U.S.C. § 522(b).** North Dakota authorizes a $100,000 homestead exemption. **N.D. Cent. Code § 28-22-02(7); N.D. Cent. Code § 47-18-01.** Proceeds from the sale of a homestead — typically after a mortgage is paid — qualify for the exemption. *See* **N.D. Cent. Code § 47-18-16;** *Farstveet v. Rudolph ex rel. Rudolph Estate*, 630 N.W.2d 24, 30 n.1 (N.D. 2001). North Dakota's homestead statute is accorded a liberal interpretation and construed in favor of the debtor. *In re Murphy*, 292 B.R. 403, 407 (Bankr. N.D. 2003).

Personal property does not qualify for the homestead exemption, but if directed properly, proceeds from the sale of personal property may qualify. ***Hanson v. First Nat'l Bank in Brookings***, 848 F.2d 866, 868 (8th Cir. 1988). The Bankruptcy Code allows maximizing exemptions, particularly the homestead exemption. ***In re Ladd***, 450 F.3d 751, 755 (8th Cir. 2006); ***In re Addison***, 540 F.3d 805 (8th Cir. 2008); ***In re Wilmoth***, 397 B.R. 915 (8th Cir. BAP 2008). "It is well established . . . that a debtor's conversion of non-exempt property to exempt property on the eve of bankruptcy for the express purpose of placing that property beyond the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled." ***Hanson***, 848 F.2d at 868.

The BAP committed two errors. First, the BAP required only "sufficient indicia" of an intent to convert non-exempt personal property into exempt homestead property. As a matter of law, there must not only be an intent to convert non-exempt assets, but also an actual conversion. *See **id.*** (noting that it is "a debtor's *conversion* of non-exempt property to exempt property on the eve of bankruptcy" that entitles the debtor to claim the exemption, unless the conversion is made "with actual intent to defraud creditors.") (emphasis added). It is not enough to deposit money into an account containing the proceeds of a homestead: our cases make clear that an actual payment to the lien holder constitutes the conversion by increasing the owner's equity. *See **Addison***, 540 F.3d at 814 ("the payment only increased Addison's equity in the home"); ***In re Wilmoth***, 397 B.R. at 918 ("[T]he debtors had converted nonexempt assets on the eve of bankruptcy to increase the value of the homestead exemption...."); ***Hanson***, 848 F.2d at 867 ("[T]he Hansons...sold certain of their property which would not be exempt...and prepaid $11,033 on their homestead real estate mortgage....").

Second, in reversing the bankruptcy court, the BAP said "we find" an intent by Danduran to convert non-exempt property into exempt property. Findings of fact are the sole province of the bankruptcy court. *See **Addison***, 540 F.3d at 817. The BAP erred in making a finding of fact. *See **In re Treadwell***, 637 F.3d 855, 863 (8th Cir. 2011) ("While it is true the BAP may affirm a bankruptcy court's decision on any

basis supported by the record, *see United States v. Pierson*, 219 F.3d 803, 807 (8th Cir. 2000), this familiar principle of appellate procedure does not empower the BAP to make factual findings.").

Earlier, in his appeal to the BAP, Danduran argued that the bankruptcy court clearly erred in finding that the personal property had a value of $7,700, because the real estate contract has only one amount ($225,000) and does not specify any value for the personal property. The determination of value is a factual finding for the bankruptcy court. *See **In re Dakota Rail, Inc.***, 946 F.2d 82 (8th Cir. 1991). At the hearing, an auctioneer testified that the personal property had a value of $7,700. Danduran testified that the items had no value, but also that the buyers required him to include the personal property "in order to enter into the purchase of this house" — proving the personal property had value. The bankruptcy court did not clearly err in finding that the personal property had a value of $7,700.

Danduran next argued to the BAP that the bankruptcy court clearly erred in finding that two items (a hot tub and a pool table) were "personal property" and not fixtures. The auctioneer testified that both items were movable and not affixed to the home. The bankruptcy court did not clearly err in finding the auctioneer credible. *See **In re Hixon***, 387 F.3d 695, 700 (8th Cir. 2004) (holding that deference is given to the bankruptcy court to weigh credibility findings).

Danduran also argued that the Trustee did not demonstrate that "the $7,700 went directly into the savings account instead of being applied to the mortgage." A claimed exemption is presumptively valid. ***In re Stephens***, 425 B.R. 529, 533 (8th Cir. BAP 2010). The Trustee, the objecting party, has the burden to prove that the exemption was not properly claimed**.** *See **Fed. R. Bankr. P. 4003(c).** If the Trustee meets this burden to produce evidence in support of the objection, the burden of production shifts to the debtor to show that the claimed exemption is proper. ***In re Walters***, 450 B.R. 109 (8th Cir. BAP 2011), *citing **In re Carter***, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). The burden of persuasion remains with the Trustee. ***Id.***

In this case, the Trustee objected and produced evidence indicating that the account contained the proceeds of real estate *and* personal property. The evidence showed a sale for $225,000 of which $7,700 was for personal property and $197,300 for a homestead. From the common pool of money, $140,860.38 was used to pay off the mortgage, with the remainder deposited into the savings account. On this record, the Trustee provided *no* evidence that the proceeds of the sale of the house and personal property were ever segregated or that only the proceeds of real property (and none of the proceeds of personal property) were used to pay off the mortgage. The Trustee cannot meet his burden of proving that Danduran's savings account contained the proceeds of non-exempt personal property.[2] "[I]f the objecting party fails to produce evidence in support of the objection, any factual issue must be resolved in favor of the debtor." **In re Walters**, 450 B.R. at 112, *quoting* 9 **Collier on Bankruptcy**, *113 ¶ 4003.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009). *See **In re Stenzel***, 301 F.3d 945, 947 (8th Cir. 2002) ("The party objecting to a claimed exemption . . . has the burden of proving the debtor is *not* entitled to the exemption."). The bankruptcy court clearly erred in ruling that all of the $7,700 was deposited into the savings account and none of it was used to pay the lien holder.[3]

The judgment of the bankruptcy court is reversed, and the case remanded for proceedings consistent with this opinion.

_____

[2] The Trustee did not object to the refund-of-escrow amounts in the savings account, or the interest earned on the account, and this court need not address their status.

[3] The Trustee did not argue in the bankruptcy court, the BAP, or this court that Danduran was entitled to only a proportion of the exemption.