# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1161

_____

In re: Jeffrey Thoms, also known as Jeff Thoms; Sue Thoms

*Debtor*s

------------------------------

Van Daele Bros., Inc.

*Appellant*

v.

Jeffrey Thoms

*Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: October 18, 2012
Filed: February 4, 2013
[Unpublished]

_____

Before LOKEN, BEAM, and SMITH, Circuit Judges.

_____

PER CURIAM.

Within Jeffrey Thoms' Chapter 7 bankruptcy proceedings, Van Daele Bros., Inc., commenced an adversarial action against Thoms, seeking to except a debt from discharge. Van Daele Bros., Inc., appeals the decision of the bankruptcy appellate panel (BAP), affirming an order of the bankruptcy court that denied Van Daele Bros., Inc., relief. We affirm.

## I. BACKGROUND

Thoms was employed as a loan officer at Kerndt Brothers Savings Bank. In this capacity, Thoms served as the lending officer for Van Daele Bros., Inc., owned by Jerry Van Daele (collectively, Van Daele). At trial, Jerry Van Daele testified that he considered Thoms a friend and someone he could trust.

In February 2008, Thoms approached Van Daele with a business proposition that would allow Thoms to secure financing for himself. Specifically, Thoms proposed that he would sell Van Daele cattle–twenty-four cows and five yearling heifers[1]–for $75,000. Then, Thoms would lease the cattle from Van Daele for five annual lease payments of $18,784.23. Van Daele would obtain a $75,000 loan from Kerndt Brothers Savings Bank to pay for the initial purchase of Thoms' cattle. Once purchased, Thoms would remain in possession of the cattle, at a lot owned by Thoms' neighbor, and continue to care for them.

Without legal representation, the parties completed the transaction on March 1, 2008. Thoms prepared all the documents necessary to execute the transaction. Nothing in these documents explained who would own the future offspring of the original twenty-nine cattle. Jerry Van Daele testified that Thoms made oral

---

[1]"The term 'heifer[s]' refers to female cattle that have not yet given birth. Once a female has 'calved,' i.e., has given birth to a calf, she becomes a 'cow.'" Nyquist v. Randall, 819 F.2d 1014, 1015 n.2 (11th Cir. 1987).

assurances and promised to notify him of any changes in the cattle herd. After he received the $75,000 purchase price, Thoms paid off a $68,000 loan from Community Bank that had been secured by the same cattle.

In August 2008, Thoms lost his job at Kerndt Brothers Savings Bank. Nevertheless, Thoms assured Van Daele that he could make the first annual lease payment due the following March. On March 1, 2009, Thoms defaulted on the first installment payment.

Jerry Van Daele testified that on April 3, 2009, he entered the property where the cattle were located and repossessed twenty cows and seven calves. In conflict with this testimony, Thoms indicated that Van Daele repossessed thirty-one cattle along with some newborns. Fred Thoms, Thoms' father, testified that five of the cows that Van Daele repossessed belonged to him and instituted two replevin actions against Van Daele in Iowa state court. Again, the record contains conflicting testimony concerning discussions that occurred after Fred commenced the replevin actions. Jerry Van Daele testified that Thoms informed him that Van Daele could pay $10,000 to make the replevin actions go away. However, Thoms testified that he offered Van Daele $10,000 to settle their own dispute, unrelated to the replevin actions. The bankruptcy court found that the parties' discussion constituted "evidence of settlement negotiations" and thus was not particularly relevant to the issues in the case.

Shortly after Van Daele repossessed the cattle, Thoms attempted to pay the first installment with a check written by his daughter, Emily Thoms. According to Thoms, Emily had received a $20,000 loan from one of Thoms' friends, Gary Zimmerman. Zimmerman testified that he loaned money to Emily for her college expenses. Van Daele refused to accept the late installment payment in exchange for return of the cattle, instead demanding full payment as called for in the initial transaction documents.

In late 2009, finding the cost of raising the cattle excessive, Van Daele sold the herd for approximately $20,000 to $23,000. Jerry Van Daele testified that he spent about $10,000 in feeding and caring for the herd.

On December 26, 2009, Thoms filed a petition for Chapter 7 bankruptcy. Van Daele commenced adversary proceedings against Thoms, claiming that Thoms' debt to Van Daele should be excepted from discharge under 11 U.S.C. § 523(a)(6), because Thoms perpetrated a "willful and malicious injury" upon Van Daele and his property. The bankruptcy court declined to grant Van Daele relief, concluding that he failed to prove that "Debtor committed deliberate or intentional acts which were substantially certain to cause Plaintiff harm or targeted at Plaintiff." Van Daele appealed this judgment, and the bankruptcy appellate panel affirmed. Van Daele appeals.

## II.    DISCUSSION

Section 523(a)(6) of the Bankruptcy Code disallows a Chapter 7 petitioner from discharging a debt "for willful and malicious injury by the debtor to another entity or the  property of another entity." The primary issue in this case is whether the bankruptcy court erred in determining that Van Daele failed to prove a "willful and malicious injury." "On appeal from a decision of the BAP, we act as a second reviewing court of the bankruptcy court's decision, independently applying the same standard of review as the BAP." In re Ungar, 633 F.3d 675, 678-79 (8th Cir. 2011) (quotation omitted). That is, we review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. Id. at 679. Whether a debtor acted willfully and maliciously involves a finding of intent–a question of fact. In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996).

For a debt to be excepted from discharge under § 523(a)(6), a creditor must show both a willful injury and a malicious injury. In re Patch, 526 F.3d 1176, 1180

(8th Cir. 2008).  In this context, "willful" is understood as "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis omitted).  However, in line with the Restatement (Second) of Torts, the debtor need not actually desire the consequences for the willful injury element to be satisfied.  In re Patch, 526 F.3d at 1180.  Rather, "[i]f the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences."  Id. at 1180.  The "malice" element of § 523(a)(6) requires that the debtor's actions are "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm."  In re Thompson, 686 F.3d 940, 947 (8th Cir. 2012) (alteration in original) (quotation omitted).  We construe the § 523(a)(6) exception narrowly.  Id. at 944.

Essentially, Van Daele argues that the bankruptcy court failed to properly take into account objective information which, according to Van Daele, shows that Thoms knew his actions were certain to cause Van Daele financial harm.  To the extent Van Daele's brief actually highlights evidence–beyond mere allegations and legal conclusions–most of the relevant evidence before the bankruptcy court depended on credibility determinations.  On this point, Van Daele maintains that the bankruptcy court should have adopted his version of the facts because "Van Daele [was] the only credible witness."  Van Daele fails to appreciate our role as a court of review.  On appeal, we defer to the bankruptcy court's credibility findings.  In re Danduran, 657 F.3d 749, 753-54 (8th Cir. 2011).  Where the evidence may be susceptible to differing interpretations, we may not disturb the bankruptcy court's findings that reflect a permissible view of the evidence.  In re Hixon, 387 F.3d 695, 700 (8th Cir. 2004).  Although the bankruptcy court's findings of fact are not a model of clarity, after carefully reviewing the record, we conclude the bankruptcy court did not clearly err

in its ultimate finding that Van Daele failed to show a "willful and malicious injury."[2] See Tamko Roofing Prods., Inc. v. Smith Eng'g Co., 450 F.3d 822, 829 (8th Cir. 2006) (recognizing that a trial court "need not make specific findings on all facts but only must formulate findings on the ultimate facts necessary to reach a decision" (internal quotation omitted)).

## III. CONCLUSION

We affirm.

_____

---

[2]Van Daele raises a second point on appeal, asserting that the bankruptcy court erred in failing to find a partnership relationship between Thoms and his father. Van Daele believes this alleged relationship is important to the "willful and malicious injury" analysis. Because, based on the record as whole, we conclude the district court did not err in its ultimate finding, Van Daele's second claim of error is without merit.