## HUSKINS, BRYSON & CO. v. HANLON ET AL.

1. **Homestead**: EXEMPTION OF PROCEEDS: INTENTION TO PURCHASE OTHER HOMESTEAD: BURDEN OF PROOF. The money arising from the sale of a homestead is not exempt from execution, unless the sale was in pursuance of a design to purchase another homestead; (*Benham v. Chamberlain*, 39 Iowa, 358; *State v. Geddis*, 44 Id., 537;) and the burden of proof to show such design is on him who claims the exemption. Accordingly, where the surviving husband asked for a partition of his wife's land, including the homestead, and he claimed one-third of the land in fee as his interest, but the land could not be divided, and he allowed it to go to sale under the partition proceedings, and his share of the proceeds was garnisheed, on execution against him, in the hands of the referees, *held*, in the absence of a showing of an intention on his part to invest the funds in another homestead, that they were not exempt.

*Appeal from Keokuk Circuit Court*

THURSDAY, JUNE 16.

THIS action involves the question whether certain money is liable to garnishment on execution, the same being the proceeds of the alleged homestead of the defendant William Hanlon, the execution debtor. The court below held that said money was exempt. The plaintiffs appeal.

*Geo. D. Woodin*, for appellants.

*C. G. Johnson* and *Mackey & Fonda*, for appellees.

ROTHROCK, J.—The facts of the case are not in dispute and are as follows: Margaret Hanlon, the wife of William Hanlon, became the owner in fee of sixty-six acres of land in October, 1864, and at about that time she and her said husband took up their residence on said land as their homestead, and continued to so occupy it until the death of Margaret Han·lon, which occurred in the year 1874. She left a will, by which she devised to her said husband all her personal property, and also all of her real estate during his life, and at his death said real property was to be sold, and one-third of the proceeds was bequeathed to the heirs of said William Hanlon, and the remainder to other named parties. After the death of the testator, William Hanlon continued to reside on the land as his homestead until December 9, 1885, when he commenced an action for the partition of said real estate A decree was entered in the action of partition, finding that William Hanlon was the owner in fee of one-third of said land, and that the same could not be divided, and it was ordered sold at referee's sale, and referees were appointed for that purpose, and the land was sold for $2,000. On the 6th day of February, 1878, the plaintiffs herein recovered judgment against William Hanlon for $150 and costs, in a certain action in the circuit court. After the land was sold, and on the 13th of September, 1886, an execution was issued on said judgment, and the referees who had sold the land were garnisheed upon the execution.

The petition for partition shows that Hanlon elected to take his one-third of said real estate, and he demanded, if the land could not be divided, that it be sold, and the proceeds divided. The referees filed their report of the sale on the 8th day of September, 1886, and said report shows that they had executed a deed to the purchaser in pursuance of the sale, and on the same day the sale and deed were approved by the court. William Hanlon was still in possession of the land at the time of the trial in the court below, and, under an agreement with the referees and purchaser, he was to con

tinue to reside thereon until March 1, 1887. The decree for partition found and declared that Hanlon was the owner in fee of one-third of the land.

The question to be determined upon the foregoing facts is, whether the money arising from the sale of the land is exempt from execution as being the proceeds of the sale of a homestead. It will be observed that Hanlon claimed to be the owner in fee of one-third of the land, and he demanded that his one-third be set off to him, or, if incapable of division, that the whole tract be sold. If, when it was ascertained that it could not be divided, he had abandoned his action, and continued to reside on the land, his homestead rights would have remained intact. But it was at his instance and by his procurement, that the order of sale, and the sale and deed, were made. He could not then defeat the conveyance of the land to the purchaser. Instead of attempting to do so, he procured the approval of the sale and deed, and the payment of the purchase-money to the referees. He then arranged with the purchaser and referees to remain in possession of the land until March 1, 1887. His rights are not different from what they would be if he had sold and conveyed his homestead by a private sale, and the purchase-money had been garnished before coming into his hands. The money arising from the sale of the homestead is not exempt from garnishment, unless the sale was in pursuance of a design to purchase another homestead. *Benham v. Chamberlain*, 39 Iowa, 358; *State v. Geddis*, 44 Id., 537.

The rule established by the cited cases is a liberal construction of section 2000 of the Code, which authorizes the owner of a homestead to change it for another homestead. But it does not appear from the record in this case that any change of homestead was contemplated by Hanlon. Surely this fact should have been made to appear. The burden of making proof thereof was upon the party claiming the homestead right. It would be a most violent presumption to find that such was the intention, without proof, or without some

such claim having been made by Hanlon. It would be equally unreasonable to require the plaintiffs to show that Hanlon had no such intention. The burden of proof was surely upon Hanlon to make the showing. It is true, as claimed by counsel for appellee, that this court has liberally construed the ·homestead laws. But homestead rights do not presumptively attach to money or choses in action. They are *prima facie* liable for debts, and are only exempt when shown to be the proceeds of a homestead sold with the intention to use such proceeds in the purchase of another homestead.

Having reached the conclusion that the judgment must be reversed upon the ground above discussed, it is unnecessary to determine other questions discussed by counsel.

REVERSED.