THE PENINSULAR STOVE COMPANY V. H. C. ROARK AND J. ROARK, Appellants.

**Fraudulent Conveyance:** MONEY ADVANCED BY WIFE WITHOUT CONTRACT TO REPAY. R. purchased land in his own name, paying therefor with money furnished by his wife. No agreement was made at any time by which R. was to repay the money so advanced, and, the land being subsequently sold, the proceeds were invested by R. in a firm of which he was a member, but the amount was withdrawn immediately before the firm became insolvent, and was used by R. in the purchase of other land, which he soon after conveyed to his wife. *Held*, that such conveyance was void as to R.'s creditors.

**Homestead Proceeds.** A husband and wife sold their homestead, intending some time to acquire a new one with the proceeds of the old; but more than a year after the sale the husband, with the wife's consent, invested the proceeds of the sale in a firm of which he was a member, and, after plaintiff had obtained a judgment against him for the firm debt, he withdrew an amount equal to that which he had invested and purchased land, which he conveyed to his wife. *Held*, that the land was not exempt from execution on plaintiff's judgment as the homestead of the defendants, under Code, sections 2000, 2001, providing that a homestead may be changed, and exempting the new one to the extent of the value of the old.

*Appeal from Audubon District Court.*—HON. WALTER I.
SMITH, Judge.

SATURDAY, MAY 18, 1895.

Creditors' bill to set aside a conveyance of real
estate from defendant H. C. Roark to his wife, Mary J.
Roark, and to subject the property to the payment of
plaintiff's judgment. From a decree for plaintiff,
defendants appeal.—*Affirmed.*

*I. L. Statzell* for appellants.

*Nash, Phelps & Green* for appellee.

Deemer, J.—On June 15, 1891, the firm of Dawson
& Roark, of which defendant H. C. Roark was a mem-
ber, executed and delivered to plaintiff their promis-
sory note for the sum of one hundred and fifty-one dol-
lars and seventy-seven cents, upon which judgment was
afterward rendered against the firm and the individ-
ual members thereof. Execution was issued on this
judgment on October 26, 1892, and returned unsatisfied.
On the twelfth day of October, 1891, one Henshaw con-
veyed to H. C. Roark the property in controversy, and
on June 13, 1892, Roark conveyed the same to his wife.
It is averred that this last conveyance was without con-
sideration, fraudulent and void as to the creditors of H.
C. Roark. It appears from the testimony that prior to
the year 1890 the defendants owned a homestead in the
town of McCallsburg, which they sold some time during
that year, and the proceeds of the sale, amounting to
about four hundred dollars, were used by H. C. Roark
as an investment in the firm of Dawson & Roark,
which was organized early in 1891. The money was

used as a part of the capital of the firm until the pur-
chase of the property in controversy from Henshaw,
when Roark drew out from the firm fifty dollars in cash
and three hundred and fifty dollars in accounts, which
he used in paying for or in part payment of the prop-
erty. Dawson drew out an equal amount about the
same time. The firm sold out in March, 1892, and was
then insolvent. It seems the firm made a disastrous
venture in the fall of 1891, which resulted in its finan-
cial ruin. The deed from Roark to his wife was with-
out consideration paid at the time, but it is claimed by
the defendants that it was the wife's money which pur-
chased the McCallsburg homestead, and that the con-
veyance in question was made in consideration of the
money so furnished, pursuant to an agreement made
when the McCallsburg homestead was sold.
The testimony as to the exact consideration for
the deed in question is somewhat conflicting.
At one time defendant H. C. Roark testified that the
deed was made in consideration of a claim his wife held
against the firm, and at another he said that he pur-
chased the property pursuant to an agreement had with
his wife when he sold the former homestead, and that
he bought the property in controversy, and turned it
over to her, to satisfy a claim she had against him for
the money he received of her, and placed in the busi-
ness of Dawson & Roark.. The testimony tends to
show that the McCallsburg property was obtained in
exchange for a team belonging to Mrs. Roark, which
she received from her grandmother's estate; but the
property was taken in the name of the husband, and
there was no agreement made at the time by which the
husband was to return or repay the money furnished.
No contractual relations are claimed to exist between
them until the time of the sale of the first homestead,
and that there was then any other than an agreement

to at some time reinvest the money in another home-
stead we very much doubt.    The case, then, in this
respect, is much like *Romans v. Maddux,* 77 Iowa, 203.
We do not think there was any consideration for the
transfer to the wife.

II.    It is contended, however, that the property in
suit is the homestead of the defendants, and not subject
to execution.    That it is so occupied and used must be
conceded, but it was acquired after plaintiff's claim was
contracted.    Defendants say to this, however, that it
was purchased from the proceeds of the former home-
stead, and is therefore exempt.    This presents the only
question open to debate in the case.

Code, section 2000, provides that "the owner may,
from time to time change the limits of the homestead,
*    *    *    or may change it entirely, but such change
shall not prejudice conveyances or liens made or
created previously thereto, and no such change of the
entire homestead made without the concurrence of the
husband or wife, shall affect his or her right or those
of the children."    Section 2001:    "The new homestead
to the extent in value of the old is exempt from execu-
tion in all cases where the old or former homestead
would have been exempt, but in no other nor in any
greater degree."    It may be conceded that
defendants, at the time they sold the first home-
stead, intended at some time to acquire a new
one of about the value of the old, but, instead of doing
this within a reasonable time, the defendant H. C.
Roark, with the knowledge and consent of the wife,
invested the money in business, and used it for many
months as a part of his investment, in the firm of which
he was a member.    With it goods were purchased, and
credit granted on the strength thereof.    While so
invested, it or the property acquired was liable to exe-
cution or garnishment, and this without reference to

the fact that it came from a former homestead. Whatever may have been the intention originally, it clearly appears that the defendants abandoned their intention to immediately purchase a homestead, and proceeded to hazard the funds, for a time at least, in a business venture. The case is quite different in its facts from *Benham v. Chamberlain*, 39 Iowa, 358, and *Pearson v. Minturn*, 18 Iowa, 36. In each of these cases there was a definite intention to purchase a new homestead with the funds arising from the old, which was never abandoned, and the court found that part of the proceeds of the first was actually used in the purchase of the second. There was no delay in carrying out the intention, and no credit was given on the strength of the supposition that the homestead right was abandoned. In the case of *State v. Geddis*, 44 Iowa, 537, it is said: "If a homestead be sold, and the proceeds applied to some other use, no doubt the exemption would cease; but when the sale is made on credit, and with the intention of using the proceeds, when collected, in purchasing another homestead, and the proceeds are not put to any intervening use, they are exempt while thus *in transitu*, so to speak, from the old homestead to the new." This, it seems to us, announces the correct rule, one that is calculated to effectuate the intention of the legislature, and to preserve the right to make an honest and *bona fide* change of homestead. Applying this test to the case at bar, it is clear that the property is not exempt. See, also, *Dalton v. Webb*, 83 Iowa, 478; *Rogers v. Raisor*, 60 Iowa, 355. The decree of the district court is *affirmed*.