HENRY HARM, Appellee, v. W. A. HALE, Sheriff, Appellant.

OCTOBER 23, 1928.

*Crary & Crary* and *George E. Allen,* for appellant.

*Prichard & Prichard,* for appellee.

KINDIG, J.—There is but one question involved, and that is whether or not the property claimed by appellee as a home-

stead is subject to execution sale for the purpose of satisfying a judgment held by the State Savings Bank of Ute.

This judgment for $3,615.95 was obtained against appellee September 22, 1926, on an indebtedness originating April 26, 1917, and renewed from time to time thereafter. Appellee's original homestead in Ute was acquired during 1916, which was approximately one year previous to the inception of the indebtedness. That property was sold by appellee in 1918, and it is claimed by him that he immediately used the proceeds thereof in purchasing the present homestead in the same town.

Appellant, the sheriff, contends that appellee's present real estate, upon which he made the levy, is liable to sale thereunder because the homestead character of the moneys received from the first property was lost and ceased to exist through and because of commingling with other funds owned by appellee, without the intention of utilizing the former to acquire the subsequent realty now claimed to be exempt. To prevent the sale under such levy, appellee, as plaintiff, instituted proceedings in the district court against the sheriff, as defendant.

After a trial, an injunction issued, restraining the sale. About this, appellant complains.

I. Section 10154 of the 1924 Code provides:

"Where there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been."

And Section 10155 of the same Code declares:

"The homestead may be sold to satisfy debts of each of the following classes: 1. Those contracted prior to its acquisition, * * * ."

According to the express enactments of the legislature, as above set forth, a homestead is liable for an antecedent debt. Hence, the problem to be solved is whether or not the "debt" in controversy is "antecedent" to appellee's acquisition of the "homestead."

At this juncture, the burden of proof is on appellee: that is to say, it is his duty to show the exemption upon the ground

that the property levied upon was purchased with the funds received from the sale of the prior homestead. *Huskins, Bryson & Co. v. Hanlon*, 72 Iowa 37; *First Nat. Bank v. Thompson*, 72 Iowa 417; *Paine v. Means*, 65 Iowa 547; *First Nat. Bank v. Baker*, 57 Iowa 197. See, also, *Clay County v. Meyers*, 159 Iowa 745.

II. No controversy arises concerning the fact that the first property was a homestead. Concession of that point is made by appellant. But there is a dispute regarding whether or not, under said Section 10154, supra, the "new homestead has been acquired with the proceeds of the old."

It appears from the record that appellee contracted to sell the first property July 29, 1918, for $5,500, payable as follows: $1,200 on that date, $1,800 the succeeding third day of August, and $2,500 March 1, 1919. All deferred payments were met when due, and appellee deposited the cash thus received in his checking account with a Ute bank. On July 30th (the day after the sale), appellee purchased a new lot for $1,200, on which he established the present homestead, and at that time (July 30th) he paid thereon $600 of the money received through the sale of the old home. The remaining $600 due on that transaction was paid by appellee from the same proceeds, August 2, 1918. A house was immediately built upon the vacant property, and, with the exception of $2,000, was paid for in cash. Such remaining $2,000 was handled by carrying a mortgage for that amount on the new residence. During the period of time in which appellee was depositing the $5,500 received from the sale of the first homestead, he also deposited in his bank account other moneys amounting to $3,000.05, making a total of $8,500.05; but in view of the fact that the highest value placed by appellant on appellee's new homestead property is $7,200, it appears that no moneys were actually invested therein except an amount within the value of the old homestead. In fact, it is apparent that appellee's equity in the new property does not exceed $5,200. Demonstration of this thought can be made by deducting the $2,000 mortgage indebtedness from the total value of $7,200. $5,200 is $300 less than $5,500, which was the value of the original homestead. Resultantly, the new investment was manifestly within the limits of the $5,500 value of the old.

When upon the witness stand, appellee testified:

"I obtained a home in Ute in 1916, where I and my wife lived. It consisted of a house and lot * * * . I sold that house, and built another home in Ute with the money. I bought some lots with this money, and built a home with it."

III. However, appellant argues that in no event did appellee put into the second investment more than $3,525.73 from the proceeds of the first. Therefore, it is urged that there was such a commingling or dissipation of the old homestead sale assets as to make at least part of the new property subject to execution.

With this proposition we are constrained to disagree. Segregation of the precise moneys received from the sale of the former abode is not essential. Use of the exact "proceeds" is not imperative, but rather, the criterion is whether or not that part of the same actually employed, added to other capital, amounts to no more in the aggregate than the value of the original homestead. *Benham v. Chamberlain & Co.*, 39 Iowa 358; *Lay v. Templeton*, 59 Iowa 684; *White v. Kinley*, 92 Iowa 598. Language used in *Benham v. Chamberlain & Co.*, supra, is:

"The doctrine is based upon sound reason. The proceeds of the sale of the first homestead, whether money or property, are added to the other assets of the seller. If he [the debtor] uses property or money other than the proceeds of his old homestead to buy a new one, his creditors are not injured, for they may reach the proceeds of his old homestead on execution, just as they could other property, after the purchase of his new homestead. No good reason can be given why the identical money or property received for the first homestead shall be used in the purchase of the second."

Likewise, in *Lay v. Templeton*, supra, it is said:

"We think the Scranton homestead is exempt, under the doctrine announced in *Benham v. Chamberlain*, 39 Iowa 358, which holds that the purchase of a second homestead, with the proceeds in part of the first, and other means, entitles the owners to hold it exempt from debts contracted subsequently to the occupancy of the old homestead."

Again, in *White v. Kinley*, supra, the following apt phraseology is found:

"It is to be remembered that it was not incumbent on the plaintiffs to show that the money received for the homestead forty acres alone was actually invested in the new homestead. The purchase of a second homestead with the proceeds in part of the first, and other means, protects the new homestead, when the value of the second does not exceed that of the first."

(Parenthetically, notation is made that some of the moneys used in the second homestead, not directly procured from the first, were earned by appellee as wages for daily labor.) Consequently, under the authorities just cited, the debtor could not be prejudiced, for the reason that the value of the old homestead has not been exceeded by investments in the new, and any sums remaining which were derived from the sale of the original property and not again put into the new are subject to execution. Sufficient showing has, therefore, been made by appellee that the homestead character of the proceeds from the old property continues into the new, so far as the reinvestment thereof is concerned.

IV. Nevertheless, appellant insists that, however the foregoing status of the record may be, appellee is not entitled to the exemption, because he has not shown that his acquirement of the new dwelling house was with the intention of preserving the homestead character of the old.

Further facts relating to the change of properties are that, after obtaining the new homestead in the manner and way before described, appellee at once commenced the construction of the new home. As soon as the basement thereof was completed, in the fall of 1918, he at once moved therein, with his family, directly from the old homestead, and continued so to live until the structure was finished, when he transferred his furniture and other belongings into the regular living quarters of the house. These circumstances, together with the facts previously related, are sufficient to establish the intention of appellee to preserve, maintain, and continue the homestead character of the first premises, into the second. Intention to so preserve the exemption need not arise through the immediate occupation of a new homestead. Reasonable time is permitted to acquire the second resi-

dence. *Fardal v. Satre*, 200 Iowa 1109; *Blue v. Heilprin & Co.*, 105 Iowa 608; *Mann v. Corrington*, 93 Iowa 108; *Cowgell v. Warrington*, 66 Iowa 666; *Benham v. Chamberlain & Co.*, supra.

While discussing this subject, we stated, in the *Benham* case:

"It also appears that it was plaintiff's intention to purchase a homestead after the sale of his farm. It is not shown that there was any unnecessary delay in carrying out this intention, or that the credit was given to him on the strength of the supposition that he had abandoned his homestead rights. Certainly, if a party may by sale change his homestead, the law will allow him a sufficient time in which to exercise the right * * * ."

V. Complaint is made because appellee's petition did not set forth the manner and way in which he claimed the property acquired its homestead character.

Objection was not made in this regard before or during the trial. Statements contained in appellee's petition were to the effect that the subject of the execution was in fact a homestead. Evidence was introduced to this effect without any exception to the inadmissibility thereof because of insufficiency of the pleadings. Trial was had on the theory that they were ample. So, at this late date, the question cannot be raised.

The judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.