# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

## No. 10-6075

_____

| | | |
|---|---|---|
| In re:  Jody May Walters, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Jody May Walters, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Southern |
| Debtor – Appellant, | * | District of Iowa |
| | * | |
| v. | * | |
| | * | |
| Bank of the West, | * | |
| | * | |
| Creditor – Appellee. | * | |

_____

Submitted: May 3, 2011
Filed:  June 2, 2011

_____

Before  KRESSEL,  Chief Judge,  FEDERMAN  and  VENTERS,  Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

Jody May Walters appeals from an order of the bankruptcy court[1] on October 1, 2010, sustaining Bank of the West's objection to her claim of a homestead exemption as to the bank's claim.

Standard of Review

The issue of whether the bankruptcy court properly construed the Iowa homestead exemption statute is a question of law, which we review de novo. *Kukowski v. Wagner (In re Kukowski)*, 356 B.R. 712, 714 (B.A.P. 8th Cir. 2006). We review the court's findings of fact for clear error. *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885, 888 (8th Cir. 2002); *Barrows v. Christians (In re Barrows)*, 408 B.R. 239, 243 (B.A.P. 8th Cir. 2009). "Findings of fact may be clearly erroneous if we have a definite and firm conviction that the bankruptcy court committed a mistake." *Cadlerock Joint Venture II, L.P. v. Sandiford (In re Sandiford)*, 394 B.R. 487, 489 (B.A.P. 8th Cir. 2008).

BACKGROUND

Jody Walters and her husband, David Walters, owned a number of residential properties in Iowa and Florida between 1999 and 2010. Walters and her husband lived together at several of those properties. They often built or remodeled houses and then sold them for profit. It was typical for them to own more than one house at a time.

The properties included the following:

---

[1] The Hon. Anita L. Shodeen, United States Bankruptcy Judge for the Southern District of Iowa.

| Iowa Properties | |
| --- | --- |
| Address | Dates |
| 3437 Scenic Valley Dr., West Des Moines | Sept. 1999 – Oct. 2004 |
| 259 62nd St., West Des Moines | Oct. 2004 – Dec. 2005 |
| 116 62nd St., West Des Moines | Dec. 2005 – Sept. 2006 |
| 3800 Fuller Rd., West Des Moines | Sept. 2006 – July 2008 |
| 1650 Lakeview Dr., Pleasant Hill | July 2008 – Present |

| Florida Properties | |
| --- | --- |
| Address | Dates |
| ____ Falling Waters Dr., Naples | June 2000 – Nov. 2001 |
| 4717 Shinecock Dr., Naples | Nov. 2001 – June 2003 |
| 5050 Cerromar Dr., Naples | June 2003 – May 2005 |
| 117 Forrest Hill Blvd., Naples | Dec. 2005 – Sept. 2006 |
| 5051 Cerromar Dr., Naples | Dec. 2005 – Sept. 2006 |
| 100721 Mirasol Ave., Miramar | Mar. 2007 – Oct. 2008 |

Walters identified 3437 Scenic Valley Drive as her homestead from September of 1999 through October of 2004. In 2002 and 2004, the Walters executed guarantees in favor of Bank of the West in connection with loans involving their business, Walters Investments International, Inc. d/b/a Walters Homes Ltd. In October of 2004, the Walters moved from 3437 Scenic Valley Drive to 259 62nd Street, but that house was destroyed by fire in December of 2005. After the fire, they moved to 116 62nd Street. In 2006, they moved to 3800 Fuller Road.

In August of 2006, the Walters sold a house at 5051 Cerromar Drive, Naples, Florida. They received net sale proceeds of $470,908.98. Walters maintains that this was her homestead at the time.

In August of 2007, Walters Investments International, Inc. transferred the Pleasant Hill property and $204,000 to Joseph and Deborah Sloan. The Walters reimbursed the Sloans for the expenses relating to the property, including real estate taxes and insurances. They admitted that the purpose of the transaction was to protect the house from attachment by their creditors. They built a house at the Pleasant Hill property in the Sloans' name, although it was built to the Walters' specifications.

In February of 2008, Bank of the West obtained judgments in excess of two million dollars against Walters, her husband, and others. Also in 2008, the Fuller house was returned to the lender. The Walters did not receive any proceeds. Walters moved from the Fuller house to the Pleasant Hill house in July of 2008. In June of 2009, the Sloans transferred the Pleasant Hill property to the Walters by quitclaim deed.

Walters filed an individual chapter 7 petition on January 3, 1010. On her Schedule C, she claimed as exempt an interest the Pleasant Hill property. Bank of the West filed an objection her claim of homestead exemption. The court stated at the onset of the evidentiary hearing, "The bank bears the burden to prove the debtor's claim of exemption is not proper." The bank proceeded first at trial, although the court allowed the parties to combine their direct examinations of the witnesses. After the bank rested, Walters' attorney indicated that the debtor would not be presenting any additional evidence. After additional briefing, the court issued a memorandum opinion and order sustaining the bank's objection to Walters' homestead exemption. This appeal ensued.

Discussion

I.     Burden of Proof

The parties argue at length about the proper burden of proof. Bankruptcy Rule 4003(b) provides: "In any hearing under this rule, the objecting party has the

4

burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c); *see also Peoples' State Bank of Wells v. Stenzel (In re Stenzel)*, 301 F.3d 945, 947 (8th Cir. 2002) (citing Fed. R. Bankr. P. 4003(c) and stating, "The party objecting to a claimed exemption, here the Bank, has the burden of proving the debtor is not entitled to the exemption."). According to the advisory committee notes, "The Code changes the thrust of [the former Rule 403] by making it the burden of the debtor to list his exemptions and the burden of parties in interest to raise objections in the absence of which 'the property claimed as exempt on such list is exempt;' § 522(l)." Fed. R. Bankr. P. 4003. advisory committee's note (1983). "[I]f the objecting party fails to produce evidence in support of the objection, any factual issue must be resolved in favor of the debtor." 9 Collier on Bankruptcy, ¶ 4003.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Once the objector meets its burden, the burden of production shifts to the debtor to produce evidence that the claimed exemption is proper, though the burden of persuasion remains with the objector. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n3 (9th Cir. 1999). However, the burden of proof is largely irrelevant in this case, because the bankruptcy court found that the bank had provided sufficient evidence and it found that there was no credible evidence to rebut the bank's showing. The burden of proof only would have made a difference if the evidence had been in equipoise or if the bank had failed to offer any credible evidence to support its case.

II.    Applicable Iowa Law

The issue on appeal is whether the bankruptcy court properly sustained the bank's objection to Walters' homestead exemption.[2] Because Iowa has opted out

---

[2]    The bank raises several alternative legal arguments in support of its position that the debtor is not entitled to exempt the Pleasant Hill property and only concedes that the Pleasant Hill property was the debtor's primary residence at the time she filed her petition. Because the bankruptcy court decided the issue on other grounds, it did not reach those issues and neither do we.

of the federal exemption scheme, debtors in Iowa must claim exemptions under Iowa state law. 11 U.S.C. § 522(b); Iowa Code § 627.10 (2010). Under Iowa law, "The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16. "The homestead must embrace the house used as a home by the owner, and, if the owner has two or more houses thus used, the owner may select which the owner will retain." Iowa Code § 561.1 (2010).

Walters claims the Pleasant Hill property as her homestead. It is undisputed that the bank obtained its judgment on the defaulted loans prior to the acquisition of the Pleasant Hill property and the bank argues that pursuant to § 561.21(1) of the Iowa Code, Walters is not entitled to exempt the homestead from execution by the bank because the bank's debts arose prior to the acquisition of the Pleasant Hill property.

Section 561.21(1) provides: "The homestead may be sold to satisfy debts of each of the following classes: Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution." Iowa Code 561.21(1) (2010); *In re Allen*, 301 B.R. 55, 59 (Bankr. S.D. Iowa 2003) ("It is important to note that section 561.21(1) speaks in terms of 'debts,' meaning a creditor holding an antecedent claim need not have reduced that claim to judgment in order to raise an objection to the debtor's homestead exemption."); *In re Marriage of McMorrow*, 342 N.W.2d 73, 76 (Iowa 1983) ("Ordinarily a homestead may be sold in satisfaction of a judgment rendered before its acquisition."); *James v. Weisman*, 143 N.W. 428, 429 (Iowa 1913) ("The judgment obtained on an indebtedness, contracted prior to the acquisition of a homestead, becomes a lien on all real estate owned by the debtor at the time of its rendition. It becomes a lien on the homestead only, because the debt was contracted prior to the acquisition of the homestead."); *In re Marriage of Armetta*, 417 N.W.2d 223 (Iowa App. 1987) (although the mother's child support judgment was not obtained until after the father's acquisition of the homestead property, the debt was incurred upon the birth of their child and therefore the

6

father's homestead was subject to judicial sale to satisfy the child support obligation).

Walters acquired the Pleasant Hill property in July of 2008, several months after the bank obtained its judgments and several years after the underlying debts were contracted. Walters argues that although the Pleasant Hill property was acquired after she became indebted to the bank and after the bank obtained its judgments, she is nonetheless entitled to protect her interest in the property under § 561.20 of the Iowa Code as an exempt homestead because the Pleasant Hill property was acquired with the proceeds of a former homestead, the Cerromar property in Florida, which was acquired prior to the bank's judgments.

Section 561.20 provides: "Where [. . .] a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been." Iowa Code § 561.20 (2010). This section "gives to the owner of the homestead the right to change homesteads, and when a homestead is disposed of for the purpose of investing the proceeds in a new homestead the proceeds are exempt from execution, and there is reasonable time allowed to make the change." *Elliott v. Till*, 259 N.W. 460, 463 (Iowa 1935). *See also Blakeslee v. Paul*, 238 N.W. 447, 448 (Iowa 1931) ("It is [. . .] well settled that the debtor has a reasonable time after the sale of his homestead to invest the proceeds in a new homestead."). "The question of the exemption of the proceeds of a homestead intended to be used in acquiring a new homestead is wholly one of the intention of the owner." *Fardal v. Satre*, 206 N.W. 22, 25 (Iowa 1925). "Failure to reinvest the sale proceeds in another homestead would, of course, mean the sale proceeds would lose their exempt status and be subject to execution." *Braunger v. Karrer*, 563 N.W.2d 1, 4 (Iowa 1997). A creditor whose debt was contracted prior to a debtor's acquisition of a homestead property can therefore prevail on an objection to a claimed homestead exemption by proving: 1) the previous property was not the debtor's homestead; 2) the debtor failed to reinvest those proceeds in the new

homestead; or 3) the debtor failed to reinvest the proceeds within a reasonable time.

III.    Debtor Not Entitled to Homestead Exemption

To summarize, it is uncontested that the Pleasant Hill property was the debtor's domicile when she filed her petition, which might otherwise entitle her to a homestead exemption.  However, the bank has established that its debt was incurred before the debtor acquired the Pleasant Hill property, which means the property would not be exempt from the bank's judgment.  However, the debtor claims that the Pleasant Hill property was acquired with the proceeds of a homestead acquired before she incurred the debt to the bank and therefore it is exempt from the bank's judgment.  It is on this last factual issue that this appeal turns.  Can the bank establish one or more of the exclusions provided by the Iowa legislature in § 521.20 and the Iowa Supreme Court in *Elliott v. Till*?

The bankruptcy court found that Walters had always considered Iowa her domicile, and that she never intended to claim Florida as her domicile.  The court only found evidence of temporary or sporadic stays in Florida.  This was not clearly erroneous.  Walters executed an affidavit on May 17, 2010 stating that the Fuller location was "her most recent primary residence" prior to Pleasant Hill. Walters and her husband offered conflicting and ambiguous testimony at trial and at their depositions regarding where she had lived during the relevant time periods and which locations she had considered to be her homestead, domicile or primary residence.  Walters testified that she never had a Florida driver's license.   She testified that she moved to Pleasant Hill after living at the Fuller home, and that prior to moving to Pleasant Hill, her address was at the Fuller home.  Based on its findings of fact, the bankruptcy court found the Cerromar property in Florida had not been Walters' homestead, and we agree.

Under Florida law, "no debtor is automatically 'receiving the benefits of' the Florida Constitutional homestead exemption simply by owning a home. A debtor

8

must take affirmative steps to take advantage of the Florida Constitutional homestead exemption, and the failure to do so subjects the home to sale." *In re Fyock*, 391 B.R. 882, 886 (Bankr. M.D. Fla. 2008); *see generally* Fla. Stat. §§ 222.01 et seq.; Fla. Admin. Code R. 12D-7.007 (2010) ("Homestead Exemptions - Residence Requirement. (1) For one to make a certain parcel of land his permanent home, he must reside thereon with a present intention of living there indefinitely and with no present intention of moving therefrom."); *Matthews v. Jeacle*, 61 Fla. 686, 55 So. 865 (Fla. 1911) ("The homestead intended by our Constitution to be exempted is the place of actual residence of the party and his family."). We agree with the bankruptcy court that the bank sufficiently proved that Walters never intended to make the Cerromar property her homestead, and that at all times, her intention was to remain domiciled in Iowa. Therefore, the Cerromar property was not legally her homestead, and she cannot avail herself of the protection of § 561.20.

Even if the Cerromar property had been Walters' homestead, the bankruptcy court found that the Pleasant Hill property was not acquired with the proceeds from the sale of the Cerromar property. Section 561.20 only applies where the new "homestead has been acquired with the proceeds of the old." Iowa Code § 561.20. The plain meaning of the statute excludes situations such as this, where the debtor has not only commingled the funds in numerous accounts, but also transferred the property to other people.

The facts of this case are analogous to those in *Peninsular Stove Co. v. Roark*, in which a couple sold their homestead with the intention of reinvesting the funds in a new homestead, but a year later, invested the money in a firm in which the husband was a member. *Peninsular Stove Co. v. Roark*, 94 Iowa 560, 63 N.W. 326 (1895). When a creditor obtained a judgment against the firm, the couple withdrew the original investment and bought land, which they wanted to claim as exempt. The Iowa Supreme Court denied the exemption, stating: "What ever may have been the intention originally, it clearly appears that the defendants abandoned their intention to immediately purchase a homestead, and proceeded to hazard the

funds." *Id.* at 327. *See also In re White*, 293 B.R. 1, 6 (Bankr. N.D. Iowa 2003) ("As long as the funds are traceable and the transaction is carried out with the intent to preserve the exemption, this fact will not constitute abandonment of the exemption."); *Harm v. Hale*, 206 Iowa 920, 221 N.W. 482, 584 (Iowa 1928) (although a strict tracing is not required, there must be a "sufficient showing [. . .] that the homestead character of the proceeds from the old property continues into the new, so far as the reinvestment thereof is concerned.").

Both Walters and her husband testified that they would have no way to prove that they actually used the Cerromar proceeds to acquire the Pleasant Hill property. The bank provided evidence that Walters and her husband, under oath, had offered ambiguous and at times contradictory testimony regarding the disposition of the proceeds from the sale of the Cerromar property. Walters testified that the only way she knew that the Pleasant Hill property was acquired with the sale proceeds from the Cerromar property is that she was assuming her husband put it there. The bankruptcy court found, "It is clear that funds from any and all sources were utilized by Walters in an effort to maintain both personal and business expenses." *In re Walters*, 2010 WL 3909230 (Bankr. S.D. Iowa 2010). The bankruptcy court's finding that the funds were appropriated for other expenses and not preserved for the Pleasant Hill homestead was supported by the record. Walters' husband testified that he ran the proceeds through approximately "50 different accounts." In addition, it is undisputed that Walters and her husband transferred the Pleasant Hill property and a large sum of cash to the Sloans prior to building the house and during construction.

Finally, while the debtor argues that the bank must satisfy its debts from nonexempt assets first, that issue is not properly before us. The issue before the bankruptcy court was whether Walters is entitled to her homestead exemption. The bank will still have to exercise its rights under state law, and Walters and her husband will be entitled to raise their other defenses at that time

## CONCLUSION

Because the bankruptcy court properly sustained the bank's objection to the debtor's claim of homestead exemption as to the bank's preexisting debts, we affirm.

_____