# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6014
_____

|  |  |
|---|---|
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | Appeal from the United States |
| \* | Bankruptcy Court for the |
| \* | Western District of Missouri |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |
| \* | |

In re: Chester Wayne King, doing business as The King's Pickle, Formerly doing business as K.C. Country, Formerly doing business as Hoot 'n Anny's

Debtor

--------------------

Frank Williams; Stephen Sherman Wyse

Creditors – Appellants

v.

Chester Wayne King

Debtor – Appellee

_____

Submitted: August 28, 2012
Filed: October 9, 2012

_____

Before KRESSEL, Chief Judge, SCHERMER and NAIL, Bankruptcy Judges
_____

KRESSEL, Chief Judge

Frank Williams and Stephen Sherman Wyse appeal from a February 7, 2012 bankruptcy court[1] order granting in part and denying in part Wyse's Motion to Reconsider Order of the Court Granting in part the Motion for Sanctions. The bankruptcy court ruled that Williams had to dismiss count I of a state court complaint within 15 days of the order but could continue to pursue counts II and III. The order reaffirmed an award of $1,500.00 in attorney fees to be paid by Wyse to the debtor, Chester Wayne King. We affirm.

## BACKGROUND

King filed a chapter 13 petition on February 18, 2010. Williams was one of King's creditors at the time of filing but was not listed as a creditor in King's schedules. The bankruptcy court granted King a voluntary conversion to chapter 7 on April 12, 2010.

Williams and King entered into an agreement on April 19, 2010 that said:

Chester W. King owe [sic] Frank L. Williams $81,000 (eighty one thousand dollars) for a personal loan, to be paid in weekly installments of $600 (six hundred dollars) beginning April 12, 2010, and ending November 10, 2012, for a total of 135 payments. Minimum payments of $300 (three hundred dollars) will be accepted only on occasion on the first of the month payments, and these partial payments will be totaled at the end of the loan with interest added accordingly.

---

[1] The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

King filed his conversion schedules on April 21, 2010, and once again, Williams was not listed as a creditor. King received his discharge on September 16, 2010. The trustee filed a Report of No Distribution on October 27, 2010 and the case was closed on November 22, 2010.

On March 4, 2011, King filed a motion to reopen the case to add creditors. The case was reopened and an amended schedule F was filed. Williams was listed on the amended schedule F as being owed a debt of $76,200 outstanding on a personal loan made in 2008 and the Wyse Law Firm was listed as Williams' representation. Four other creditors with claims totaling $5,339.41 were also added to King's schedule F. King also filed a Notice of Reopening of Bankruptcy Case to Add Creditor, which in addition to listing the five creditors to be added, their respective debts and that the debts would be general unsecured debts, stated the following:

> The above named creditor has 30 days from the date of service below to object to reopening of the case for addition of the claim, or to file a complaint objecting to discharge of the debt or discharge of the debtor under 11 U.S.C. §§ 523, 727. If neither an objection to reopening nor a complaint under §523 or § 727 is filed by the deadline, the creditor's claim will be discharged and the case will be reclosed without further notice or hearing.[2]

Williams filed an objection to the motion to reopen on March 28, 2011. In his objection, Williams stated:

> [T]he debt was re-incorporated and [King] obtained additional funding on April 19, 2010, into a new $81,000 debt. Mr. King *notified me of his bankruptcy*[3] but asserted he would not include any

---

[2] This notice has no basis in the Code or Rules and has no effect on the dischargeability of Williams' debt and is irrelevant to the outcome of this appeal.

[3] Emphasis added.

obligation to me in his bankruptcy action and in reliance upon that promise I thereafter extended *additional*[4] credit for him and his on-going business activity, the "King's Pickle" and $76,200.00 remains unpaid.

Williams also stated that "King's promise not to include his debts to me in his bankruptcy was used to induce me to provide additional funding to him … [King] should not now be allowed to deny this promise and discharge his obligation to me." The objection lists two debts extended after the conversion date that were not listed on King's amended Schedule F. Those debts are $11,500 outstanding on a $15,200 loan extended on October 2, 2010 and $1,500 outstanding on a $1,900 loan extended at some point or throughout 2010. The objection was signed and filed by Williams.

The bankruptcy court's March 30, 2011 docket entry directed King's attorney, Harvey A. Hoffman, to serve the Notice of Reopening of Bankruptcy Case to Add Creditors(s) within three days on any parties that did not receive electronic notice. The order also set a hearing on the motion for April 14, 2011. On April 1, Hoffman filed a Certificate of Service certifying that the notice was sent by mail, but the certificate does not indicate to which creditors he mailed the notice.

At the April 14th hearing[5], Wyse appeared on Williams' behalf—the docket minute entry states, "Atty Wyse did appear for pro se creditor, Frank Williams." The bankruptcy court overruled Williams' objection, noted that Williams failed to file an adversary proceeding within 30 days of the notice, ordered the case

---

[4] Emphasis added.

[5] Our record does not contain a transcript of the hearing.

4

reopened as of April 14th and added the five previously omitted creditors. The case was then reclosed on April 29, 2011.

On or about May 17, 2011, Williams sued King in the Boone County Circuit Court. Count I of the suit asked for damages in the amount of $81,915 on an outstanding debt of $76,200 from a loan of $81,000 made on April 17, 2010. Count II sought $11,845 in damages on an outstanding debt of $11,500 on a loan of $15,200 made on October 2, 2010. Count III invoked the doctrine of *money had and received*[6] asking for a sum of $1,514 on funds loaned throughout 2010 totaling $1,900. King answered with a motion to dismiss stating that the debts sought in counts I – III were discharged in his bankruptcy case.

On October 5, 2011, King filed another motion to reopen his case, this time to file an adversary proceeding. The motion complained that Williams, through his attorney, Wyse, filed the Boone County Circuit Court suit to collect a discharged debt. The certificate of service indicates that only Wyse received notice through regular mail and anyone else receiving notice received such notice by electronic filing. The bankruptcy court granted the order to reopen the case on October 6, 2011. The order included instructions that King must file any separate subsequent motions with notice or an adversary complaint.

On October 10, 2011, King served the order reopening the case on the Wyse Law Firm by regular mail. That same day King also filed a motion that recited the progress of the state court proceeding and asked for sanctions against Wyse for

---

[6] The doctrine of *money had and received*, a common law *assumpsit*, is an equitable doctrine in which the defendant has received money that should have been paid to the plaintiff and which equity and good conscience demand the defendant ought to pay to the plaintiff. *Black's Law Dictionary* 123, 1005 (6th ed. 1990).

pursuing collection of the discharged debt in state court. Additionally, the motion asked for an order requiring Wyse to dismiss the state court suit or in the alternative an order enjoining the state circuit court from hearing the proceeding. There was no request for relief made against Williams. The motion for sanctions was served on parties of interest by both electronic notification and regular mail.

The bankruptcy court set a November 1, 2011 deadline to respond to the motion for sanctions. Wyse did not respond. The sanctions motion was granted in part on November 2, 2011. The bankruptcy court found that Wyse violated the discharge injunction and ordered him to pay damages in the amount of $1,500 and required Wyse to dismiss the state court action against King. The order made no mention of Williams. King was directed to serve the order on parties not receiving electronic notice—which he did that day.

On November 15, 2011 Wyse filed a motion to reconsider[7] the order granting the motion for sanctions. The motion alleged that the debt sought in state court was the result of a contract entered into by Williams and King on April 17, 2010—five days after King converted his case to chapter 7. Wyse contended that the contract demonstrates the state action only concerns post-conversion debt. In an attempt to argue that notice was improper Wyse stated:

> This post-petition debt was made after the debtor converted his case, was incurred during a pending bankruptcy case, and was made without notice to the Creditor Williams, who was omitted from Debtor's schedules of creditors.

The motion further suggests that the bankruptcy court did not have jurisdiction over the contractual debt because it was incurred post-conversion. Wyse's request to have the hearing on an expedited basis was denied.

---

[7] As we have noted many times, the Rules recognize no such motion.

In a reply to the motion to reconsider, filed November 17, 2011, King argued that Williams did not object to discharge and that Wyse failed to respond to the earlier notice concerning the motion for sanctions. Any such objection to discharge made by Williams in response to the motion to add creditors, King argued, would have been fruitless because the debt listed was pre-conversion and properly discharged.

Upon Wyse's request, the bankruptcy court stayed the sanctions order on November 22, 2011. On December 15, 2011 the bankruptcy court scheduled a January 19, 2012 evidentiary hearing on the motion to reconsider. King filed an exhibit list on January 13, 2012 that described exhibits[8] two through nine as "Notes" with the following values and terms:

| Exhibit # | Note Value | Weekly Payment | Payment Time Period |
| --- | --- | --- | --- |
| 2. | $32,000 | $800 | 11-23-08 – 8-23-09 |
| 3. | $45,000 | $900 | 1-18-09 – 1-3-10 |
| 4. | $49,800 | $600 | 5-23-09 – 12-18-10 |
| 5. | $52,500 | $750 | 4-25-09 – 8-14-10 |
| 6. | $51,600 | $750 | 4-25-09 – 8-14-10 |
| 7. | $52,000 | $900 | 3-1-09 – 4-11-2010 |
| **King's chapter 13 case converted to chapter 7 on April 12, 2010** | | | |
| 8. | $81,000 | $600 | 4-17-10 – 11-10-10 |
| 9. | $15,200 | $650 | 10-2-10 – 3-12-11 |

At the evidentiary hearing, the bankruptcy court made it clear that any "reincorporation" of the debt would be a reaffirmation under 11 U.S.C. 524(c) and

---

[8] While the exhibit index is part of our record, the actual exhibits from the hearing are not.

was not at issue due to the parties' failure to comply with the Code's reaffirmation requirements. The only issue before the bankruptcy court was whether the debt was incurred pre- or post- conversion to chapter 7, and thus subject to discharge, with Williams bearing the burden to prove which amounts were post-conversion.

In his testimony, Williams claimed that the $81,000 debt was entirely post-conversion. Williams stated he liquidated $30,433.70 from his 401(k) on March 30, 2010 and deposited the proceeds with the Boone County Bank. Williams claimed he physically handed $63,000 in cash to King on April 19, 2010 in two separate transactions—one of $30,000 at the Boone County Bank and one of $33,000 at Williams' house. In addition to the cash, Williams testified that King was also responsible for a $7,485.64 federal tax penalty and a $1,100 state tax burden for early liquidation of his 401(k) and $9,415 in interest for a total payback on the loan of $81,000. None of this debt, according to Williams' testimony, was incurred pre-conversion. Williams again admitted to having actual knowledge of King's bankruptcy case. According to Williams, the purpose of King's bankruptcy was to discharge his debts to others so King could borrow the $81,000 loaned on April 19th.

King testified that the two parties had a course of dealing in which, upon King's request, before the previous loan was paid off, Williams would renew King's prior debt while extending new credit resulting in one loan with new payment terms. King stated that the entirety of the $76,200 debt outstanding on the $81,000 note was obtained pre-conversion. The bankruptcy court took the matter under advisement and allowed both parties to submit briefs within 10 days of the hearing date.

A telephonic hearing was held on February 7, 2012 to announce the bankruptcy court's decision to grant in part and deny in part the motion to reconsider. During the hearing the bankruptcy court stated, "… since [Williams]

did not contend that the indebtedness was non-dischargeable, he did not lose the opportunity to litigate that question under Section 523(c)."[9] The bankruptcy court ruled that the $76,200 debt "included at least some debt due on prior transactions," and that Williams did not meet his "burden of proving that all the amounts incorporated into the April 19, 2010 note sued on in Count One of the state court petition were new consideration." The sanction against Wyse for $1,500 in attorney fees was maintained. Williams was directed to amend the state court petition to dismiss count I seeking recovery of the $76,200 debt that was previously discharged but, as King agreed, Williams was allowed to pursue counts II and III.

Williams and Wyse filed an additional motion to reconsider on February 9, 2012. The motion argued extensively, for the first time, that proper notice was not provided to Williams on the original motion for sanctions but only improperly to Wyse, who was not Williams' attorney of record in the bankruptcy case. Wyse explained that he only represented Williams in the state court matter—the one that spurred the sanctions motion—and that any delay in responding was the result of excusable neglect. Wyse stated:

> The communication of this motion … were [sic] not timely responded to by the Law Firm and/or forwarded to Frank Williams because they were unrelated to our contractual relationship and specific representation of Frank Williams in the State Court action and the belief that on any future bankruptcy matters that the Baehr Law Firm would be acting as Frank Williams' attorney.

In a docket order the bankruptcy court stated that the arguments presented could have been made in the original motion to reconsider but were not. Additionally the order declared that Williams and Wyse had a full opportunity to

---

[9] Williams challenges this comment apparently not realizing that it was favorable to him.

present evidence and arguments on the merits of the sanctions motion and the bankruptcy court found the sanctions order justified on the law and facts and any finding of excusable neglect would have no effect on that ruling. The motion was denied on February 10th.

On February 17, 2012, Williams filed a notice of appeal[10] of the bankruptcy court's November 2, 2011 sanctions order. The notice of appeal argued that Williams was not provided proper notice and that the only notice provided was improperly sent to Wyse—arguing that Wyse was Williams' attorney in the state court action but not in the federal bankruptcy proceeding. The notice implied that the bankruptcy court was prejudiced against Williams by stating, "[t]he Court further erred in its February 07, 2012 order not [sic] finding Frank Williams', an African-American citizen, testimony not credible."

On appeal, Williams argues that (1) the bankruptcy court misinterpreted the testimony at trial and the $81,000 debt was entirely incurred post-conversion and thus was not subject to the discharge, (2) service of the motion for sanctions was improper, (3) Williams did contest the dischargeability of the debt and was not properly afforded an opportunity to argue such, and (4) Williams' motion to reconsider should have been granted under a theory of excusable neglect. King makes two arguments: (1) Williams did not properly preserve the service of process, jurisdiction or Wyse's limited appearance issues for appeal and (2) Williams' arguments that the bankruptcy court's credibility determinations of the witnesses and weighing of the evidence at trial constituted error do not meet the clearly erroneous standard.

---

[10] The notice of appeal is likely tardy to the extent that it appeals the November 2, 2011, order. We are treating the appeal as being taken from the February 7, 2012, order.

## JURISDICTION

We have jurisdiction over this appeal from the final order of the bankruptcy court.  *See* 28 U.S.C. § 158(b).

## STANDARD OF REVIEW

We review "the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*."  *Baldwin v. Credit Based Asset Servicing and Securitization (In re Baldwin)*, 516 F.3d 734, 728-729 (8th Cir. 2008).  We shall give due regard to the bankruptcy court's assessment of witness credibility.  Fed. R. Bankr. P. 8013.

## DISCUSSION

**King's pre-conversion debt was discharged**

A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).  "The scope of a discharge is final when entered and subsequent events do not change what debts were or were not discharged."  *In re Anderson*, 72 B.R. 495, 496 (Bankr. D. Minn. 1987).  The Code defines the effect of a chapter 7 discharge, in pertinent part, as:

> Except as provided in section 523 … a discharge … discharges the debtor from all debts that arose before the date of the order from relief … whether or not a proof of claim based on any such debt of liability is filed under section 501 … and whether or not a claim based on any such debt of liability is allowed under section 502 …

11 U.S.C. § 727(b).

We note, as did the bankruptcy court, that this is not a dischargeability issue in the true sense.  The issue is not whether Williams' debt is excepted from discharge under some provision of § 523; Williams argues instead that this debt did

11

not arise until after the chapter 7 order for relief and is therefore not *subject* to the debtor's discharge.

## Reaffirmation of pre-petition debt

Williams' first argument is that the April 17th note was a contract between Williams and King entered into post-conversion and therefore the debt can be pursued in state court. In the bankruptcy context, a post-petition contract renewing pre-petition debt is a reaffirmation agreement and is only effective with court approval in strict compliance with 11 U.S.C. § 524. *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002). No approval was sought or granted so any re-incorporation of pre-conversion debt is unenforceable as a matter of law. 11 U.S.C. § 524(c) says as much explicitly.

## Post-petition debt

Alternatively (and factually inconsistently) Williams argues that the entire debt was based on money he loaned to King after the chapter 7 order for relief. Williams argues that the bankruptcy court interpreted the evidentiary hearing testimony incorrectly and should have found that all of the debt in count I was incurred post-petition.[11] We see no reason to disturb the bankruptcy court's assessment of witness credibility.

In Williams' objection to the motion to reopen, he indicated that at least part of the $81,000 debt evidenced by the April promissory note was "re-incorporated" from a pre-conversion debt. Congruently, King's testimony suggested that re-incorporation was part of their course of dealing and that the $76,200 scheduled in his amended schedule F was re-incorporated into the $81,000 loan evidenced by

---

[11] He also argues extensively that the bankruptcy court improperly applied the burden of proof. We disagree. However, the burden of proof is only important if one party does not present any evidence or the evidence is in equipoise. *Walters v. Bank of the West (In re Walters)*, 450 B.R. 109, 113. Neither is true here.

the April 17th note. King acknowledges that the October note represents a post-conversion loan and can be pursued in state court.

Williams' testimony departed from the re-incorporation theory espoused in his objection. He testified that the April 17th loan was completely separate from any pre-conversion debts. Williams' original explanation is consistent with King's testimony, but Williams' second explanation is inconsistent with both King's testimony and his own objection to reopening the case. The bankruptcy court was in the best position to decide which of Williams' versions was true. The bankruptcy court's finding that no part of the debt was incurred pre-conversion is not clearly erroneous.

**Notice and excusable neglect**

We agree with King that Wyse and Williams made their notice and excusable neglect arguments for the first time on appeal. Issues raised for the first time on appeal are typically deemed null. *See U.S. v. Winters*, 600 F.3d 963, 970 (8th Cir. 2010). At any rate, we believe neither argument has merit. Any relief a second reconsideration could have afforded Wyse due to excusable neglect through Fed. R. Civ. P. 60(b) was provided when the bankruptcy court entertained the first motion to reconsider and held an evidentiary hearing. The excusable neglect Wyse claims is for failure to file a response to the motion for sanctions by the bankruptcy court imposed deadline. However, the evidentiary hearing allowed Wyse and Williams a full opportunity to present their evidence and arguments in opposition to the motion for sanctions.

The notice issue is slightly more complicated. First and foremost, the motion for sanctions was against Wyse alone. The motion did not indicate that Williams was a party to the motion and the bankruptcy court assessed sanctions only against Wyse. Based on the motion and the sanctions order, notice to Williams appears unnecessary. However, assuming *arguendo* it was necessary for

13

Williams to receive notice of the motion for sanctions, we believe the notice served only on Wyse was both required and sufficient.

Wyse claims that when he represented Williams at the hearing on the motion to reopen the case to add creditors, he—Wyse—appeared on a limited basis. The record does not so indicate. The minute entry on the docket merely states, "Atty Wyse did appear for pro se creditor, Frank Williams." There is no evidence in the record that Wyse requested his appearance be one of a limited nature, only that he represented Williams at the hearing. This appearance makes Wyse an attorney of record. *Black's Law Dictionary* 138 (8th ed. 2004) ("The lawyer who appears for a party in a lawsuit and who is entitled to receive, on the party's behalf, all pleadings and other formal documents from the court and from other parties."). "If a party is represented by an attorney, service … must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1). As a result, service of the sanctions motion on Wyse as Williams' attorney was not only sufficient, it was required.

Even if Wyse did request his appearance be of a limited nature, absent a provision in the local rules for a limited appearance, only withdrawal with leave of the court relieves an attorney of record from accepting notice for his client. *See United States v. Heron*, 513 F. Supp. 2d 393, 396 (E.D. Pa. 2007). The local rules for the Western District of Missouri Bankruptcy Court state that "an attorney of record may withdraw only by Court permission." W.D. Mo. R. Local Rule 2091-1. The standards and requirements of the District Court of the Western District of Missouri have been adopted by the Bankruptcy Court. W.D. Mo. R. Local Rule 2090-1. Upon reviewing both the local bankruptcy and district court rules in the Western District of Missouri, we found no provision providing that an attorney can make a limited appearance. Wyse did not make a motion to the bankruptcy court

14

to withdraw as Williams' counsel and was required to receive notice on Williams' behalf.

Regardless, Wyse admits he is the attorney of record in the state court proceeding seeking to collect this $81,000 debt. The Missouri rules of professional conduct require a lawyer to keep his "client reasonably informed about the status of the matter." Mo. R. Prof. Conduct 4-1.4(a)(1) (2007). The notice Wyse received indicated there may be a permanent injunction preventing Williams from pursuit of the debts alleged in the state court complaint. This type of information constitutes a status of the matter Wyse was under a professional responsibility to communicate to his client.

## CONCLUSION

For the reasons stated above, the order of the bankruptcy court is affirmed.

_____